## BRUNER VS UNITED STATES.

### Opinion delivered September 23, 1903.

1. *Criminal Law—Removal of Cause—Affidavit—Citizeuship.*

   Act of Cong., June 28, 1898, c. 517, sec. 29 (30 Stat. 511), provides that whenever a member of the Choctaw or Chickasaw tribe of Indians is indicted for homicide he may file his affidavit that he cannot get a fair trial and obtain a change of venue to the U. S. Dist. Court. Where a defendant filed an affidavit under the above statute and made no proof of his citizenship, other than a statement in his affidavit, the court in finding that he was not such Indian citizen and in refusing to remove the cause committed no error.

2. *Criminal Law—Evidence—Exclusion.*

   Where, in a prosecution for homicide, the court excluded testimony covering statements of a co-defendant after the murder and while in jail, and expressly stated to the jury that they must not consider such statements, that they could not be taken as evidence against him, no error can be predicated upon the offer of such testimony.

3. *Murder—Conspiracy—Instructions.*

   In a prosecution for homicide the jury was charged that if they found a conspiracy to kill the deceased existed, that defendant was one of the members of the conspiracy and the killing was the result of same then defendant was guilty of murder, although the deceased had, without any authority, threatened to arrest the defendant and exhibited a pistol. *Held,* a correct charge.

4. *Homicide—Self-Defense—Instruction Concerning, 'Unnecessary in Absence of Evidence.*

   The court is not bound, in a prosecution for homicide resulting from a conspiracy, to instruct the jury with reference to self-defense where there is no evidence on which to sustain such theory of defense.

Appeal from the United States Court for the Southern District.

JOHN R. THOMAS, Judge.

Pink Bruner was convicted of murder. He appeals. Affirmed.

Lyman Mahardy, Pink Bruner and Ben Cage, as defendants, were jointly indicted, charged with the murder of one G. H. Myers on the 5th day of May, 1900, in the Southern District of the Indian Territory, by shooting him with a pistol. The first count charges that Lyman Mahardy held the pistol which caused the death, and the second count charges that Ben Cage held the pistol which killed Myers. In the first count Pink Bruner and Ben Cage are charged with being present, aiding, helping, abetting, assisting, and maintaining Mahardy in the murder; and in the second count Mahardy and Pink Bruner are charged with being present, aiding, helping, abetting, assisting, and maintaining Cage in the murder of Myers. No question is raised as to the sufficiency of the indictment, and in this case Pink Bruner filed a motion to transfer his cause from the South ern District of the Indian Territory to the United States Federal Court for the Eastern District of Texas, maintaining, under his motion, by affidavit, that Congress, on June 28, 1898, passed an act (chapter 517, 30 Stat. 495,) which provided that an agreement made by the Commission of the Five Civilized Tribes with the commission representing the Choctaw and Chickasaw Tribes of Indians on the 23d day of April, 1897, was ratified and confirmed, and that thereafter said agreement was ratified by the Choctaw and Chickasaw Tribes of Indians; that by one of the provisions of said agreement so ratified, and made a part of said act it was provided, amongst other things, that whenever a member of the Choctaw and Chickasaw Nations is indicted for homicide he may, within 30 days after said indictment and his arrest thereon, and before the same is reached for trial,

file with the clerk of the court in which he is indicted his affidavit that he cannot get a fair trial in said court, and it thereupon shall be the duty of the judge of said court to order a change of venue in such case to the United States court for the Western District of Arkansas, at Ft. Smith, Ark., or to the United States court for the Eastern District of Texas, at Paris, Tex., always selecting the court nearest to the place where the crime is supposed to have been committed, and the most convenient; that the defendant Pink Bruner is a Chickasaw Indian by blood, and a member of the Chickasaw Tribe of Indians, and that he cannot get a fair trial in said court, upon said charge, and asking for an order changing the venue to the United States Court for the Eastern District of Texas, at Paris, Tex. This motion was overruled by the court, and exceptions duly noted. The case was afterwards, on May 17, 1901, tried to a jury, and thereafter, and on the 27th day of May, 1901, the jury returned into court their verdict finding the defendant guilty of murder as charged, without capital punishment. And thereafter Pink Bruner filed his motion for a new trial, which was by the court duly overruled, and defendant allowed an exception, and defendant was, upon the verdict of the jury, sentenced for life to the United States Penitentiary at Ft. Leavenworth, Kan. Defendant thereupon prosecuted his appeal to this court, and this cause comes up on bill of exceptions for hearing and decision.

*Moman Pruiett,* for appellant. *Wm. B. Johnson,* for the United States.

GILL, C. J. The first assignment of error is that the trial court erred in overruling appellant's motion to change the venue of this case from the Southern District of the Indian Territory, at Paul's Valley, to the United States court at Paris, Texas, as is provided for in what is known as the "Atoka Agreement." The act of Congress providing for the change of venue herein attempted to be prayed is as follows: "That whenever a member

of the Choctaw and Chickasaw Nations is indicted for homicide, he may, within thirty days after such indictment and his arrest thereon, and before the same is reached for trial, file with the clerk of the court in which he is indicted, his affidavit that he cannot get a fair trial in said court, and it thereupon shall be the duty of the judge of said court to order a change of venue in such case to the United States District Court for the Western District of Arkansas, at Fort Smith, Arkansas, or to the United States District Court for the Eastern District of Texas, at Paris, Texas, always selecting the court that in his judgment is nearest or most convenient to the place where the crime charged in the indictment is supposed to have been committed, which court shall have jurisdiction to try the case." Act June 28, 1898, c. 517, § 29, 30 Stat. 511. It will be noticed that the act says: "Whenever a member of the Choctaw or Chickasaw Nations is indicted for homicide, * * * he may file with the clerk of court * * * his affidavit that he cannot get a fair trial in said court, and it thereupon shall be the duty of said court to order a change of venue," etc. In the case at bar the defendant filed his affidavit that he was a member of the Chickasaw Tribe of Indians, and in the same affidavit stated that he could not get a fair trial. In other words, he tendered the issue of his citizenship by his affidavit, but without any other proof of his citizenship to the court, nor, so far as the record discloses, did he make any offer of proof of citizenship, but subjected himself and his affidavit to the court that the court might pass upon whether he was or was not a citizen; and the court, upon an inspection, passed upon the question, and decided that on such showing he was not a Chickasaw citizen, and not entitled to the provisions of the statute. It certainly was within the province of the court to pass upon this question. If the defendant was not a Chickasaw citizen as claimed, he was not entitled to the benefit of the statute. The court was there for the purpose of saying whether, under his showing, he was or was not a Chicka-

saw citizen, and the court held, upon the showing, that he was
not a Chickasaw citizen, and therefore not entitled to the bene-
fits of the statute. We do not think there was error in the holding
of the court in reference to the matter. If the defendant had
come into the court with proof as to his citizenship and tendered
it to the court, there might have been something for this court
to pass upon to say whether the defendant made such showing
of citizenship as entitled him to the benefits of this statute.
But he neither made or tendered any proof whatever on the
subject, and the court, upon consideration of what was before
him, had the right to pass upon the citizenship question with
such means as it had at hand, and its action in holding that
·the defendant was not entitled to the provisions of this statute
is not error to be reversed by this court upon the record submitted
to us.

The appellant, in the presentation of the second, third,
fourth, fifth, sixth, seventh, eighth, and ninth assignments,
groups them together for consideration, and complains that the
court admitted evidence or excluded same in such manner and
in such particulars as were extremely hurtful and prejudicial
to the appellant. We have carefully gone over the testimony of
the several witnesses, and the action of the court thereon, and
the errors complained of in these several assignments of error.
We do not think that any error was committed in the admission
by the trial judge of the testimony complained of. Had the
trial court permitted the testimony offered in the attempt
made by the government to prove statements of appellant's
codefendant, Lyman Mahardy, after the murder, while in jail,
even though the same were made in the hearing of appellant,
there would certainly have been prejudicial error; but the court
not only excluded such testimony, and took the same from the
jury, but stated, in the presence of the jury, that the jury must
not consider such statements, and emphasized it by saying that

"the statements made by the defendant in custody, with a howling mob around him, should not be taken as evidence against him." There certainly was no error whatever in such action of the court of which the appellant could complain.

As to the eleventh assignment, complaint is made of that portion of the judge's instruction relating to the conspiracy, and concluding as follows: "And although you may believe that said Myers had threatened to arrest defendant and parties with him, and had exhibited his pistol for that purpose, and although you may further believe that said Myers, as an officer, had no right to arrest said parties outside of the corporate limits of Davis, still, if you believe, beyond a reasonable doubt, from the evidence, that said killing was done in compliance with and in furtherance of an unlawful conspiracy, such killing would be murder." We do not think there was error in this charge of the trial judge. If a conspiracy existed to kill the deceased, and appellant was one of the members of the conspiracy—facts which were left wholly to the jury under this and other instructions of the court—and in pursuance of such conspiracy, and as a result of it, the deceased was killed, the act of such killing was murder and was chargeable to each and every person who entered into such conspiracy. The court does not, in its charge, seek to ascertain whether or not there was a conspiracy, but states, if, under the evidence, there was, and the jury so finds, and the defendant was a party to such conspiracy, and deceased met his death as a result of it, and appellant was one of the conspirators, then appellant would be guilty of murder. There can be no doubt but that this proposition is the law, and there is certainly no error in stating such law to the jury as charged by the court in this case.

The appellant insists, under his eleventh assignment of error, that the evidence in the record called for an affirmative charge on the law of self-defense, and that he called the attention

of the court to the matter, and submitted three special instruc-
tions relative to the law of self-defense. The evidence in this
case discloses at no point from beginning to end any claim of
self-defense, or any defense in any way whatever. The defense
in this case is simply that of requiring the government to fully
and satisfactorily make out its case by its evidence. While
there was some testimony offered by the defendant, he did not
in any way raise the theory of self-defense, nor did it in any wise
relate to the act of killing, nor did the defendant testify upon
the subject of the killing or the circumstances surrounding the
killing at all, and there is no self-defense or any defense shown
in the case in an affirmative way. The charges of the court to
the jury were to the effect that, if there was a conspiracy to kill
the deceased, and the deceased was induced to go to the place
of the killing by the act of the conspirators, and if the evidence
showed that appellant was one of the conspirators, such killing
by the appellant or his co-conspirators was murder; and the
jury were told that, if they found that there was a conspiracy,
and that defendant was one of the conspirators, and that the
deceased was enticed to the place of his death in pursuance of
such conspiracy, and then and there done to death by the con-
spirators, or some one of them, the appellant being one of
them, the appellant should be found guilty of murder.
The question of the conspiracy, by the instructions of
the court, and whether or not the appellant was one of such
conspirators, were left wholly to the jury by the court
in able, clear, and concise instructions; and the court was not
bound in any way, under the evidence, to give instructions
based upon the theory of self-defense, when there was no evidence
in the case upon which to sustain such theory.

We think that the eleventh, twelfth, thirteenth, fourteenth,
and fifteenth assignments of error are not well taken; that the
evidence in the case was fairly submitted to the jury, and sus-

tains the verdict of guilty against the defendant; and, finding no error whatever in the record, the decision of the lower court is affirmed.

CLAYTON and RAYMOND, JJ., concur.