## A. G. CROSS v. STATE.

No. A-1983.  Opinion Filed October 6, 1914.

(143 Pac. 202.)

1. **APPEAL—Verdict—Conflicting Evidence.** Controverted questions of fact are always for the jury, and this court will not disturb a conviction, where the record discloses evidence supporting two theories, one on behalf of the state and a different one by the accused. The jury's findings in such matters are conclusive.

2. **CONTINUANCE—Refusal—Change of Counsel.** When the record discloses the fact that a person is arrested charged with a crime, and has repeatedly become a fugitive from justice, and repeatedly

retained and changed counsel, this court will not reverse a conviction because he was forced to go to trial with counsel who was appointed by the court.

3.  **SAME—Absence of Witnesses.** An application for continuance on the ground that certain material witnesses have not been secured, and which shows no diligence whatever, should not be filed, but, when it is filed, should be overruled by the trial court.

4.  **APPEAL—Presentation for Review.** This court will not undertake to discuss or determine misunderstandings between counsel and the court when the record shows, by recitals of the trial court, one state of facts, and the contention of counsel another. Agreements for continuance, postponements, and other matters affecting the rights of the accused should always be entered of record.

5.  **TRIAL — Harmless Error — Instructions.** An instruction which states a correct principle of law in the abstract, and which could not have materially injured the accused, is harmless.

6.  **EVIDENCE—Other Offenses.** Evidence is admissible, in the trial of a criminal cause, which tends directly to prove the guilt of the accused, although it may also show, or tend to show, the commission of a separate and distinct felony, and this is true, although the admission of such testimony may arouse resentment in the minds of the jury and result in a greater punishment than would ordinarily be inflicted.

(Syllabus by the Court.)

*Appeal from County Court, McClain County;*
*R. McMillan, Judge.*

A. G. Cross was convicted of larceny of domestic animals, and appeals. Affirmed.

*E. E. Glasco* and *Monroe Osborn,* for plaintiff in error.

*C. J. Davenport,* Asst. Atty. Gen., for the State.

ARMSTRONG, P. J. Plaintiff in error, A. G. Cross, was convicted at the October, 1912, term of the district court of McClain county on a charge of larceny of domestic animals, and his punishment fixed at imprisonment in the state penitentiary for a period of six years. In an effort to reverse the judgment, he brings his appeal to this court.

The information was filed in this case on the 24th day of September, 1910. The accused was arraigned in October, 1910. The case was continued until the February, 1911, term, at which time the accused was a fugitive from justice. At the July, 1911, term, the accused was still a fugitive from justice. In August, 1911, he was arrested in Colorado and returned to the county jail of McClain county, and within a few days broke jail and again became a fugitive from justice. In October, 1911, he was apprehended in Corsicana, Tex., and again returned to Oklahoma and placed in the McClain county jail.

The information charges the larceny of two mares in July, 1910, of the value of $225, and the property of J. Goldsmith, a negro farmer residing in McClain county. The accused was a white man and formerly lived with his family near Blanchard, Okla. The theory of the state is that the accused deserted his family and stole the horses in order to enable him to leave the country with a woman other than his wife. His testimony tends to establish this contention. He left the community in company with a woman, and was seen at Norman, Okla., in her company, driving a team; was later seen at Shawnee in possession of the stolen team, and introduced the same woman as his wife. At Shawnee he sold the animals for $75; was later arrested and placed in jail on this charge. The mares were recovered from a party at Shawnee.

It is contended by the accused that his testimony tends to establish the fact that he bought the animals from Tecumseh Goldsmith, a son of J. Goldsmith, and paid him $75 therefor, $54 cash, a gun valued at $20, and settled a debt of $1. The accused testified that the transaction in which he purchased the animals in question occurred at the home and in the presence of Gill Gatewood and Alice Gatewood between sundown and dark on the 19th day of July, 1910. Tecumseh Goldsmith testified on behalf of the state and denied making the sale or having anything to do therewith; that he was at another place some distance away conducting a dance at the time the accused contends he bought the animals from him.

It appears that the accused had retained as counsel Monroe Osborn, when he was first arrested, who withdrew from the case seven or eight days before it was called for trial; that he had also retained as counsel J. F. Sharp, who apparently withdrew from the case some time prior to the trial; that, immediately after Monroe Osborn withdrew from the case, E. E. Glasco was retained. When the case was called for trial, E. E. Glasco was sick at a hotel in Blanchard, Okla., where he had gone in an effort to secure witnesses and prepare for the trial of the case, whereupon the court appointed Monroe Osborn as counsel for the accused and ordered the case to be tried. An application for continuance was filed on the ground that his counsel, Glasco, was sick and unable to be in attendance upon the court. That he was sick and unable to attend court there is no doubt. It will be remembered that Mr. Glasco had only been in the case six or seven days at this time; that Mr. Osborn had been employed many months, and had withdrawn as counsel only a few days prior to the time, all of which facts clearly appear from the record. This court is not in position to say that the trial court was guilty of an abuse of discretion in appointing Mr. Osborn and requiring the case to be tried. The conduct of the accused in this case is not such that entitles him to complain of the fact that the discretion of the court was exercised against him. Had Mr. Glasco been the sole and only counsel in the case from the time the accused had been arrested, this assignment would present a different aspect, but he had been employed in the case only a few days. Mr. Osborn had been interested therein for a long time.

The application for continuance contained other averments, among them the inability of the accused to procure the attendance of Gill Gatewood and Alice Gatewood. The record fails to disclose the exercise of any diligence in an effort to procure these two witnesses. They had been for years residents of McClain county, but had some time prior to the trial of this case moved to another county 250 miles away. No process had been sought from the district court to require their attendance from any other county. It is very apparent, from a reading of the

record, that the accused was depending more on his ability to jump bond, or break jail, and escape, than he was on the testimony of witnesses. Ample time had elapsed from the date the case was assigned to procure the proper service of process upon these witnesses.

There were other averments in the motion which were determined adversely to the contention of counsel, and which involve a personal misunderstanding between defendant's counsel and the trial court. The ruling of the trial court on these propositions will not be disturbed. The record nowhere discloses the facts upon which the contentions were based, other than statements by counsel and recitals by the court.

It is contended that the court erred in submitting certain instructions to the jury which advised them that they could convict the accused if he was concerned in the commission of the larceny either directly or indirectly. The instruction possibly was not necessary, under the facts disclosed by the record, but it was not prejudicial.

A careful examination of the record discloses no error which in our opinion entitles the accused to any relief at the hands of this court. The judgment is not excessive, and would not have been disturbed if the punishment had been fixed at ten years' imprisonment instead of six.

Counsel contend that certain incompetent testimony was introduced tending to show that the accused was guilty of another crime by reason of association with the woman, Mrs. Burleson. The theory of the state in this trial justified the introduction of this testimony, and no error was committed thereby. As stated, *supra,* the contention of the state was that the accused deserted his wife and children and stole these horses in order to enable him to leave the country with the Burleson woman. Whatever resentment may have arisen in the minds of the jurors by reason of the development of these facts, if any, was brought upon the accused by his own acts.

"Evidence which tends to prove the guilt of the accused is admissible, although it may also tend to establish the commis-

sion of a separate and distinct felony, and thus in a measure apparently work injury to the accused."

See *Vickers v. United States,* 1 Okla. Cr. 452, 98 Pac. 467, and cases there cited.

The judgment, however, does not indicate that they sought to inflict a punishment more than commensurate with the crime. The maximum punishment is ten years. The deliberate and malicious theft of a team of animals of the kind this accused stole, the purpose for which they were stolen, and the facts disclosed by this record as a whole merit the maximum punishment. The accused received all he was entitled to receive at the hands of the trial court and the jury.

The judgment is in all things affirmed.

DOYLE, J., concurs. FURMAN, J., absent on account of sickness.