# ISOM BEAM v. STATE.

No. A-3518—Opinion Filed Jan. 4, 1921.

Rehearing Denied April 14, 1921.

(196 Pac. 720.)

(Syllabus.)

1. **INDICTMENT AND INFORMATION—Immaterial Variance—Means of Commission of Crime.** The means by which a homicide is committed is not a constituent element of such crime, and a variance between the averments of the original complaint and the information filed in the trial court as to such means is not prejudicial to the substantial rights of defendant.

2. **SAME—Complaint.** Where a defendant is bound by an examining magistrate on the hearing of a preliminary examination to answer a particular felony in the district or superior court, the county attorney is authorized to charge the commission of such felony according to the facts as developed on the preliminary examination, and is not limited in such instances to the allegations contained in the preliminary complaint.

3. **HOMICIDE—Joint Defendant Responsible for Acts of Others.** Where two defendants, jointly informed against for the commission of a homicide, act together, one is responsible for the acts of the other, and it is immaterial whether death resulted from a wound inflicted by the defendant on trial, provided that the wounds inflicted by either or both defendants contributed to death.

4. **SAME—Aiding and Abetting.** It is not necessarily essential to the guilt of defendant of homicide that he directly commit the act resulting in death; it is sufficient if he aid and abet another in its commission.

5. **SAME—Evidence of Other Offense.** Where a homicide is committed by two persons acting together, one by stabbing deceased with a knife and the other by shooting with a pistol, evidence that the codefendant not on trial wounded a third person by one of the pistol shots is properly admitted as part of the res gestae, although it tends directly to prove the commission of an offense other than that charged, when the two offenses are so linked together in point of time or circumstances that proof of one cannot be fully made without developing the fact of the other.

6.    **HOMICIDE—Instructions.** For reasons holding that. the trial
      court did not err in giving certain instructions objected and ex-
      cepted to, see body of opinion. Also, for reasons holding not
      error to refuse certain requested instructions.

*Appeal from Superior Court, Okmulgee County;*

*R. E. Simpson, Judge.*

Isom Beam was convicted of manslaughter and sen-
tenced to serve a term of four years' imprisonment in the
penitentiary, and appeals. Affirmed.

On the 6th day of May, 1918, a preliminary complaint
was filed in the justice court of R. B. Campbell, justice of
the peace in Okmulgee county, jointly charging Isom Beam
and Albert Fisher with the murder of one Louis Deer, al-
leged to have been committed on the 29th day of April,
1918, in said county. Thereafter, on the 14th day of May,
1918, defendant and Fisher were bound over to answer
said crime to the superior court of Okmulgee county. On
the 28th day of May, 1918, an information was filed in the
superior court of Okmulgee county by Joe S. Eaton, county
attorney, jointly charging defendant and Albert Fisher
with the murder of Louis Deer.

Thereafter, defendant was granted a severance and
filed a motion to quash the information, a demurrer thereto,
and also a motion to strike certain portions of the informa-
tion, all of which were overruled by the court and excep-
tions allowed. Thereafter, defendant entered his plea of
not guilty, and on the 19th day of September, 1918, de-
fendant was placed on trial in the Henryetta division of
said court, and on the 20th day of September, 1918, the
jury returned a verdict of guilty of manslaughter in the
first degree, and fixed defendant's punishment at four
years' imprisonment at hard labor in the state penitentiary.

Defendant filed a motion for a new trial, which was overruled by the court, to which action defendant duly excepted, and on the 26th day of September, 1918, the court pronounced sentence and rendered judgment, from which judgment an appeal was prayed to this court, and the cause is here by filing in this court on the 14th day of March, 1919, a properly authenticated case-made with petition in error attached.

Defendant and nearly all the witnesses in this case are full-blood citizens of the Creek Tribe of Indians. On the 29th day of April, 1918, Louis Deer, the deceased, Albert Fisher, Louis Fisher, and Isom Beam were all under the influence of intoxicating liquor, and in that condition had gone from the city of Henryetta to the home of Albert Fisher west of the town of Bryant, in Okmulgee county, where the killing occurred.

According to the evidence of the state's witnesses, the parties reached the home of Albert Fisher about 3 or 4 o'clock in the morning. This home was a framehouse, built in ell-shape facing south, and the south room and the room immediately north of it were used partly, if not entirely, as bedrooms. There were two beds in the north room and one in the south room. At the time the parties arrived on the premises, there were sleeping in the north room Betty Barnett, a sister of Louis Deer, Nellie Barnett, Fanny Fisher, Yarner Fisher, and some children; and in the south room William Robinson, an Indian boy.

When the parties first came to the house, they did not go to bed, but after staying a short time went over to the house of Betty Barnett, which was across the road, where they stayed about 30 minutes, and then returned. At this time the deceased, Louis Deer, was staggering, and, at the

request of Betty Barnett, Albert Fisher helped put Louis Deer to bed in the north room.

That shortly thereafter, Albert Fisher and Louis Fisher began quarreling in the south room, and Louis Fisher left to go to his home, and then Albert Fisher started to go back to town and was cursing his sister, Yarner Fisher, and Louis Deer got up out of bed and started into the other room for the announced purpose of stopping the fuss; that a quarrel ensued between Albert Fisher and Louis Deer; that Albert Fisher had a pistol, and Louis and Albert were scuffling on the bed, when Isom Beam, the defendant, rushed in and stabbed Louis Deer with a knife; that later they ran out into the yard, and Albert Fisher shot Louis Deer in the leg, and also shot Betty Barnett in the arm; that a doctor was called to see Louis Deer a couple of days later; and that he died on the 6th day of May, 1918, from septic poisoning which had set up in one or the other of the wounds inflicted upon deceased by defendants, Beam and Fisher.

Defendant, in his own behalf, testified substantially: That he had gone to the home of Albert Fisher in company with deceased and Louis Fisher and Albert Fisher from Henryetta. That they were all drinking freely of whisky which they had procured at Henryetta. That, after staying at Albert Fisher's house a short time playing cards, they went over to Betty Barnett's house, and deceased accused witness of attempting to steal a pocketbook, and a difficulty ensued in which deceased and witness scuffled. Later the parties went back to Fisher's, and on the way over there deceased knocked Louis Fisher down, and Louis Fisher then went to his home. Deer and Louis Fisher were more intoxicated than the other two. That Deer was

put to bed by witness after they arrived at Fisher's on the second visit. That witness suggested to Albert Fisher that they go back to town. That Fisher went to his trunk and was getting his shirt and told his sister, Yarner Fisher, they were going back to town. That deceased said they were not going and came into the room and got Fisher down on the bed. That Betty Barnett came in and also got to helping hold Fisher on the bed. That witness pulled Betty Barnett off of Fisher. That witness and Albert Fisher came to town after the fight. That witness paid a fine for being drunk. That witness had no hard feeling toward deceased.

Albert Fisher, jointly informed against with defendant, testified substantially as did defendant, and also testified that, when deceased and Betty Barnett had witness on the bed, deceased struck witness several times with his fist, and that Betty Barnett also struck witness with a shoe; that witness then got out his knife and cut Louis Deer in order to get him off; that they were all pretty drunk; that defendant had no connection with it other than to pull Betty Barnett off of witness; that witness saw deceased next day, and was at the justice of the peace court and entered a plea of guilty to carrying concealed weapons and paid his fine.

Yarner Fisher, sister of Albert Fisher, testified to the fact that the boys came to Albert Fisher's that night; that Betty Barnett and deceased were both on top of her brother; that defendant was standing back of the bed; and that she did not see defendant do anything or have anything in his hand.

Nellie Barnett testified substantially as did Yarner

Fisher, and also said she only heard one shot fired that night.

*E. W. Smith, Charles L. Phillips,* and *Edw. J. Gilder,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). It is first contended that the trial court erred in not sustaining the motion to quash the information, and the demurrer thereto.

Under these assignments of error it is argued that the trial court never obtained jurisdiction of the subject-matter of the offense, because the charge contained in the preliminary complaint is materially different from that contained in the information filed in the superior court.

The charging part of the complaint is as follows:

" * * * Did unlawfully, willfully and feloniously, and without authority of law and with a premeditated design to effect the death of one Louis Deer, shoot and discharge a leaden bullet into the body of him, the said Louis Deer, from a certain loaded pistol or a shotgun, the exact description of the weapon used being to this informant unknown, which said defendants then and there had and then and there held in their hands; then and there and thereby inflicting upon the body of him, the said Louis Deer one mortal wound. * * *"

The charging part of the information is substantially the same as the complaint, except that it charges the means used to accomplish the homicide as follows:

"From a certain loaded pistol which the said Albert Fisher then and there had and held in his hands, and from

a certain pocketknife then and there held in the hands of Isom Beam."

It is evident that the preliminary complaint and the information both charge defendants Fisher and Beam with the commission of the same homicide, the killing of Louis Deer. The only difference between the instruments is in the change of the means employed by defendants to accomplish the homicide—the complaint charged the joint commission of the homicide by the defendants by shooting "a certain loaded pistol, or a shotgun, the exact description of the weapon used being to this informant unknown," and the information charged the joint commission of the identical homicide by the use of a pistol by Fisher and a pocket-knife by Beam.

In the case of *Weatherholt v. State,* 9 Okla. Cr. 161, 131 Pac. 185, this court held:

"The complaint before the committing magistrate averred that the killing was effected by means of a shotgun; and the information in the district court averred that the killing was effected by means of a Winchester rifle. Held that this is a sufficient compliance with the constitutional provision (article 2, § 17, Bill of Rights) as the means by which the offense was committed are not a constituent element of the crime of murder, and that the variance between the averments of the original complaint and the information filed in the district court are not to the prejudice of the substantial rights of the defendant."

The holding in the Weatherholt Case is decisive of the question here involved, but in addition it may be said that there was no waiver of preliminary examination by the defendants in this case, and under such circumstances the county attorney was authorized to file an information in the district or superior court charging the crime committed

according to the facts in evidence on the preliminary examination. Where a defendant or defendants are bound by an examining magistrate on the hearing of a preliminary examination to answer a particular felony in the distri t or superior court, the county attorney is authorized to charge the commission of such felony according to the facts as developed on the preliminary examination and is not limited in such instances to the allegations contained in the preliminary complaint. The pertinent inquiry in the trial court then is: Does the information charge the offense for which defendant was held to answer? If such inquiry may be properly answered in the affirmative, the trial court has acquired jurisdiction of the subject-matter of that offense. *Williams v. State,* 6 Okla. Cr. 373, 118 Pac. 1006; *Ponosky v. State,* 8 Okla. Cr. 116, 126 Pac. 451; *Tucker v. State,* 8 Okla. Cr. 428, 128 Pac. 313; *Agent v. State, ante,* p. 281, 194 Pac. 233.

For reasons stated, the actions of the trial court in overruling the motion to quash and the demurrer to the information were not erroneous.

It is next contended that the evidence is insufficient to sustain the verdict.

The main contention under this assignment of error seems to be that there is no proof in the record that any wound inflicted upon deceased by this defendant caused death.

There is evidence to the effect that both Albert Fisher and defendant wounded deceased—Albert Fisher by shooting deceased with a pistol, and Beam by stabbing deceased with a knife. Peritonitis or septic poisoning set up, and Louis Deer died from the effects thereof.

The testimony of the attending physician is positive to the effect that death was caused primarily from septic poisoning setting up "in this wound." The physician had previously described three wounds on deceased's body:

"One on his left. side just under the clavicle, looked like a stab or gash, that had been seared over, dried; didn't look like a gunshot wound; couldn't say positively what produced that wound. * * * Another on his right side, seemed to be right over the liver; seemed to feather out from the front; looked like a gash or stab.. (This is the wound state's witness testified was inflicted by defendant.) This wound was from back to front. Never probed it. He wouldn't let me bother the wound at all, said he hurt so all over, complained of aching. Another surface wound on his leg above the knee, I believe a gunshot wound."

No reasonable inference, other than that the wound inflicted by defendant contributed in some measure to bring about the death of Louis Deer, can be drawn from the evidence of the attending physician. Apparently all these wounds contributed in a greater or lesser degree to the death of Deer.

While there is no direct showing of a conspiracy entered into on the part of Fisher and Beam to kill Deer, and that the homicide was the result thereof, there is evidence of concert of action on their part. According to the state's evidence, after Fisher, in the presence of Beam and with his knowledge, had assaulted Deer two or three times by striking him with a pistol, and when Deer and Fisher were struggling on the bed, Deer attempting to take the pistol from Fisher, Beam rushed in and stabbed Deer in the right side with a knife, after which Fisher and Beam got together, and Fisher then shot Deer with the pistol.

Under such circumstances, this defendant will not be

held alone to criminal responsibility for death caused solely by the wound inflicted by him; but having voluntarily entered into an assault wherein his codefendant was attempting to use a deadly weapon, and having himself, in that encounter, used with telling effect a sharp and dangerous weapon in a place close to a vital organ in deceased's body, inflicting thereby a very serious wound, defendant by his conduct in thus rushing to the support of another assailant must be held to assume criminal responsibility for a death the result of any of the wounds inflicted in the assault, whether by himself or his coassailant.

It is not necessarily essential to the guilt of the defendant of homicide that he directly commit the act resulting in the death; it is sufficient if he aid and abet another in its commission.

There is sufficient evidence in this record to authorize the conclusion that Beam and Fisher acted in concert in assaulting Deer, and that one aided and abetted the other in the infliction of wounds, in one or more of which septic poisoning set up resulting in death. They were both principals to the commission of the homicide, and it was immaterial which wound directly caused the death. Defendant was responsible criminally, not only for the wounds inflicted by him, but also those inflicted by Fisher after he (defendant) voluntarily entered into the assault upon deceased.

It is also contended that the trial court erred in permitting the witness Betty Barnett (Deer) to testify that Albert Fisher shot at and wounded her.

This evidence was admissible as part of the *res gestae,* the record disclosing that the shooting of the witness Bar-

nett by Fisher was so interwoven with the assault made by Fisher and Beam upon the deceased, Deer, as to form merely a part of an integral transaction, covering a very limited period of time, without definite interruption, so that proof of the nature of the assault made upon Deer could not have been fully made without developing the fact that the witness Barnett was injured by one of the bullets fired from a pistol in the hands of Fisher.

Under such circumstances, we deem the evidence complained of part of the *res gestae,* and for that reason competent. The following cases are in point: *Tempy v. State,* 9 Okla. Cr. 446, 132 Pac. 383; *Tudor v. State,* 14 Okla. Cr. 70, 167 Pac. 341.

Further, it is contended that the trial court erred in giving, over the objection and exception of defendant, the seventh, eleventh, and thirteenth paragraphs of the general charge to the jury. Counsel contend that there is no evidence of "acting together" shown by Albert Fisher and defendant Beam in assaulting Deer, and that the trial court should not have given the instructions complained of because the jury was thereby permitted to find Beam guilty, although the jurors may have believed that Fisher's acts caused the death of Deer.

We have heretofore pointed out in this opinion evidence which the court believes to have been a sufficient basis for the giving of the instructions Nos. 7, 11, and 13. There is no contention that the law is incorrectly or even inaccurately stated in the instructions, the only contention being that such instructions were not applicable to the evidence. For reasons stated above, we conclude that defendant was not prejudiced by the court's action in this respect.

Finally, it is contended that the trial court erred in refusing to give certain requested instructions.

These instructions were properly refused. The court fully and fairly covered the law of the case in the general charge. The requested instructions were based upon the theory that there was an entire absence of the proof of concert of action between Fisher and Beam, while the view this court takes of the evidence results in the contrary conclusion.

Finding no substantial error in the record before us, the judgment of the superior court of Okmulgee county, finding the defendant guilty of manslaughter in the first degree and assessing his punishment at imprisonment in the state penitentiary for a term of four years, is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.