ALBERT ELLIS v. STATE.

No. A-8496.   March 3, 1933.
(19 Pac. [2d] 972.)

John L. Hodge, for plaintiff in error.

J. Berry King, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and Marvin Shilling, Co. Atty., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Carter county of robbery with firearms, and was sentenced to death.

Because of the extreme punishment and the questions raised by this appeal, we state the facts more fully than otherwise would be necessary.   In the latter part of August, 1932, defendant, a married man, age 25 years, and one Oscar Brandon, left the place they were staying near the city of Ada and went to the town of Madill, and from there via Ardmore to Sulphur, taking some two days to

make the journey. On the night of August 28, on highway 18 between Ardmore and Sulphur, they came to a narrow point in the Arbuckle mountains, and there barricaded the highway with a road plow and some large stones so that a car could not pass, then concealed themselves. On this day John E. Weber of Texas, driving a Buick automobile, accompanied by his wife, his sister-in-law and three daughters, drove from Texas to Turner Falls and Sulphur, and in the early evening started on this highway to return to Texas. On arriving at this barricade they stopped the car, and about this time defendant and Brandon came from their place of concealment, and gave a command which apparently the party in the car did not hear. He then gave a second command and fired his pistol. Defendant and Brandon required the occupants of the car to get out; defendant holding a pistol on them while Brandon searched them. During this time both defendant and his companion used vile, profane, and threatening language. They took some property from Weber and other members of the party, and, having completed the search, they said they would take the car and would take one of the party. Weber pleaded with them not to harm his family and told them to take the car and offered to go with them, which defendant and Brandon refused. Then the wife and the sister-in-law offered to go, but all these offers were refused. They informed Weber they would take the youngest daughter, a girl 18 years old, weighing less than 100 pounds. Weber and his wife pleaded with them not to harm her, as did also the daughter, and they agreed they would not. They stated in substance that she was to convey them a distance and return with the car. Defendant and Brandon then took the girl by the arms and all got in the front seat and left. They drove south a mile or two at a high speed, struck a bridge, and caused a blowout

in one of the tires. They went some distance further and stopped to fix the tire, and, while Brandon was working on it, defendant forced the girl from the car and outraged her, after which she was again outraged by Brandon. Some distance further they bound, gagged, and left the girl, and soon afterwards abandoned the car, and defendant and Brandon separated. Defendant was arrested the next day near Wapanucka while traveling on foot. He was armed with a .45 Colt's pistol. Brandon was also arrested. Defendant informed the arresting officers that they had arrested the wrong man, but later made a full statement admitting the facts substantially as set out. Ellis was tried separately, and this appeal is by him alone. Defendant's counsel reserved his statement until the conclusion of the testimony for the state. The cross-examination of the state's witnesses apparently sought to raise a reasonable doubt of defendant's identity as the person who committed the crime. Defendant did not testify.

The first contention of defendant is that section 2543, St. 1931, under which defendant is prosecuted, is in violation of article 2, § 9, state Const., which forbids cruel or unusual punishment. This fixes the punishment for robbery with firearms at imprisonment in the penitentiary for five years as a minimum and the death penalty as a maximum. The courts and text-writers agree that the term "cruel or unusual punishment" is not susceptible of exact definition. Originally, no doubt, this prohibition was intended to forbid punishment of a barbarous character as the whipping post, the pillory, burning at the stake, breaking on the wheel, dismemberment, mutilation, or punishment in the nature of torture. Some of the authorities intimate that a punishment so disproportionate to the character of the offense for which it is imposed as to shock the conscience and moral senses of the people is

cruel and unusual. See, in this connection, 16 C. J. p. 1354; State v. Feilen, 70 Wash. 65, 126 Pac. 75, 41 L. R. A. (N. S.) 418, Ann. Cas. 1914B, 512, and authorities cited; In re O'Shea, 11 Cal. App. 568, 105 Pac. 776; Cole v. State, 48 Okla. Cr. 220, 291 Pac. 141; Robards v. State, 37 Okla. Cr. 371, 259 Pac. 166.

The criminal who with firearms holds up, robs, and assaults persons traveling the highways is a potential murderer. The display of force, the abuse and threats made in this case indicate that, if any resistance had been made by the Weber party, or if they had failed to comply with the demands of defendant and his companion, they were in danger of death. The punishment fixed by the Legislature for this class of crimes is not within the constitutional prohibition against cruel and unusual punishment.

It is argued also that the court erred in permitting the state to propound questions to the Weber girl of statements made by defendant and his companion in reference to other jobs. It is insisted this is an attack upon the character of defendant. This complaint is directed to the following question and answer:

"Q. Did they say anything about what else they were going to do that night? A. Talked about accomplishing other jobs as they called them."

There is nothing improper in this question and answer. At the time defendant was engaged in the commission of a crime. The statements made were a part of the res gestae, and tend to throw light on the transaction and to show plan and scheme. In this connection it is also argued that it was error to permit counsel for the state to ask a witness for defendant if he had served a term in the penitentiary. This witness, an aunt of defendant, testified she had known him all his life. She was then asked to state his history, and she did testify in substance

that he was an ignorant country boy; that he had little schooling; that his stepmother drove him away from home; that he had a wife and children, and had been in extremely needy circumstances, and had been unable to get employment. The state objected to this line of evidence, but counsel for defendant insisted:

"* * * He is entitled to be tried according to the opportunity he has had and according to his status in life surroundings, etc., * * * a real ignorant country boy, the penalty ought not to be as heavy on him as a man of good sound mind. * * *"

Objection was sustained to some of these questions and overruled as to others and the history and circumstances of defendant given at some length. In cross-examination of this witness she was asked if defendant had served a term in the penitentiary. The testimony of this witness clearly was to get before the jury the defendant's theory that he was a country boy; that owing to poverty and the stress of circumstances, and for the purpose of maintaining his family, he was led into this crime. This testimony offered by defendant has the effect of placing his character, reputation, and life history before the jury. Having done this, defendant is not in a position to complain if other parts of his history and his status in life are called to the attention of the jury.

Next, it is contended the court erred in his instructions to the jury. In instruction 4 the court in substance told the jury that evidence showing, or tending to show, other offenses than that charged, could not be considered except as they might tend to connect defendant with the crime charged in the information. Defendant's counsel excepted; the court then asked that he prepare a more full instruction or point out the particular objection to the instruction; he did not do so, but said:

"The law don't require counsel for the defendant to come in and point out to the court the specific charge and items that the law requires the court to give."

The objection is directed more to the admissibility of the testimony of the rape of the girl taken from the scene of the robbery than to the instruction. The instruction should have been more full, but it is not fundamentally erroneous and not prejudicial. Defendant's counsel did not conform to the usual requirements by pointing out to the court the particular objection to the instruction. Boutcher v. State, 4 Okla. Cr. 585, 112 Pac. 762; Inman v. State, 22 Okla. Cr. 161, 210 Pac. 742. However, in a case of this gravity, if the instruction were incorrect and prejudicial, the failure of counsel to point out the objection or to make a written request for instruction would not deter us in correcting an error. Some other objection is made to the instructions, but they are not of sufficient importance to require discussion.

The most earnest argument is made that the court erred in permitting the state to introduce the evidence of rape as we have detailed. Counsel insist the rape was a separate, distinct, and different transaction from the robbery; that proof of rape was not necessary to establish the robbery, and threw no light upon it and was prejudicially erroneous. In support of this proposition, he states the well-settled rule that evidence of an offense other than the one charged is admissible only when it tends to prove the offense charged and has some logical connection therewith, citing: Stanfield v. State, 30 Okla. Cr. 82, 235 Pac. 256; Frazier v. State, 31 Okla. Cr. 322, 239 Pac. 186; Ricker v. State, 39 Okla. Cr. 58, 263 Pac. 160; Welch v. State, 41 Okla. Cr. 207, 271 Pac. 172; Fray v. State, 46 Okla. Cr. 260, 285 Pac. 142; State v. Willson, 113 Or. 450, 230 Pac. 810, 233 Pac. 259, 39 A. L. R. 84.

He further insists the evidence was not admissible as res gestae, citing numerous authorities.

The state contends the evidence was competent and admissible as being a part of the res gestae, as showing a scheme of criminal action, as proof of intent, as proof of identity, as proof of motive, and for the consideration of the jury in determining the punishment. At the time this evidence was introduced by the state, the issue of guilt or innocence was being tried. This involved the fact of the robbery and circumstances incident thereto, as well as the identity of the accused as the person committing it. The evidence tended to show that a part of the robbery was the taking of the young girl of the party by defendant and his companion from the scene of the robbery. This appears from the fact that they refused to permit any other member of the party to go with them, but forced the young girl to go. The rape occurred in a few minutes, while they were escaping from the scene in the automobile taken in the robbery. This is all a part of the res gestae, and tends to throw light on the intent and motives of the defendant and his companion in committing the robbery. It was a part of the carrying out of the plan of the robbery formed before or at the time. Rex v. Bond, 2 K. B. 389; Beam v. State, 18 Okla. Cr. 529, 196 Pac. 720; Ellis v. State, 22 Okla. Cr. 11, 208 Pac. 1051; Sledge v. State, 40 Okla. Cr. 421, 269 Pac. 385; Carmack v. State, 44 Okla. Cr. 171, 279 Pac. 964.

It is admissible for another reason, at the time this evidence was admitted, defendant's counsel by cross-examination had sought to raise a doubt of the identity of defendant by questioning the ability of the witnesses to identify him in the darkness as one of the robbers and by questioning their ability to describe the dress and appear-

ance of the robbers under the condition of the light and darkness at the time and place. This evidence therefore was admissible on the question of identity. The young girl who was forced to accompany defendant and his companion and was the victim of the outrage was better able to identify positively the defendant than any other member of the party, and, if in so doing she disclosed a further crime by defendant and his companion, they cannot complain. 16 C. J. 586; Tudor v. State, 14 Okla. Cr. 67, 167 Pac. 341; Johnson v. State, 35 Okla. Cr. 212, 249 Pac. 971; Quinn v. State, 54 Okla. Cr. 179, 16 Pac. (2d) 591; State v. Baker, 125 Kan. 173, 263 Pac. 1059; State v. Robinson, 170 Iowa, 267, 152 N. W. 590.

We think, too, the evidence was admissible as casting light on the entire transaction and is competent for the consideration of the jury in determining the atrocity of the offense and fixing the punishment. In Cross v. State, 11 Okla. Cr. 117, 143 Pac. 202, this court said:

"Evidence is admissible, in the trial of a criminal cause, which tends directly to prove the guilt of the accused, although it may also show, or tend to show, the commission of a separate and distinct felony, and this is true although the admission of such testimony may arouse resentment in the minds of the jury and result in a greater punishment than would ordinarily be inflicted."

See, also, Abshier v. People, 87 Colo. 507, 289 Pac. 1081.

Lastly, it is argued the punishment is excessive for the crime of robbery and should not be permitted to stand. This point has been partially disposed of by what was said under the first assignment. We have given this contention serious consideration. On reading the record, we see that defendant and his companion acting together for

a criminal purpose with firearms got in their power a man and his family peacefully traveling the highway, whom they cursed, threatened, and robbed, then took their automobile and youngest daughter, transported her a short distance, and ravished and left her bound and gagged by the roadside. We are not willing to say that the punishment imposed is excessive.

Upon a consideration of the entire record, the judgment will be affirmed.

The original time for the execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by this court that the judgment and sentence of the district court of Carter county be carried out by the electrocution of the defendant on Friday, May 5, 1933.

DAVENPORT and CHAPPELL, JJ., concur.