J. R. SWARB, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12889.

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1961.

Claude Hendon, Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., Robert D. Simms, County Atty., Tulsa, for defendant in error.

BRETT, Judge.

This is an appeal by J. R. Swarb, plaintiff in error, defendant below, from a judgment and sentence to life imprisonment in the state penitentiary, for the murder of Viola Bridges, in Tulsa, Oklahoma, on July 12, 1959. 21 O.S.A. § 701 and 21 O.S.A. § 707. Defendant was charged by information in the District Court of Tulsa County, Oklahoma, tried by a jury, convicted, and his punishment was set at life imprisonment; judgment and sentence entered accordingly, and from said judgment and sentence this appeal was perfected.

The defendant was represented in the trial of the case by Hon. Thomas D. Fraz-

ier and John D. Harris, of Tulsa, Oklahoma, both able and reputable attorneys, but not participants in this appeal; the appeal being solely conducted by the Hon. Claude Hendon of Shawnee, Oklahoma, likewise able and reputable.

Briefly, the facts of the killing herein involved are as hereinafter delineated. The defendant was the former husband of Earlene Starnes, who married Starnes after her divorce from Swarb. The defendant contended that the former wife owed him $350 in cash. He brooded over that fact and also that his wife had obtained considerable of his property from him. On the day of the shooting, July 12, 1959, the defendant met the deceased, Mrs. Bridges, her son-in-law, Kenneth Starnes, and his former wife, Earlene Starnes, in a church parking lot and demanded payment of the money he contended that Earlene owed him. She refused to comply with his demands and some words were passed, whereupon the defendant turned away. Then Kenneth Starnes stepped within a few feet of the defendant to talk to him; the defendant whipped out his pistol and shot Starnes twice. He then turned and shot his former wife, wounding her, and then shot and killed Mrs. Bridges, for which killing he was convicted herein. The defendant did not testify or offer any evidence, but he stood on that produced by the state. The record discloses the conviction was sustained by sufficient evidence.

The defendant complains of the conviction, first, because the trial court erred in giving instruction No. 2, including the following language therein:

"* * * And you are instructed that the design to kill is inferred from the fact of killing, unless the facts and circumstances in the case raise a reasonable doubt as to whether such design existed."

This instruction was approved in Brantley v. State, 15 Okl.Cr. 6, 175 P. 51. We cannot say the substance of this instruction as given therein can be improved upon. We do not believe that as contended by the defendant, the foregoing language invaded the province of the jury, though it might have been preferable to have told the jury that the design to kill *may be* inferred from the fact of killing. Still, the language "unless the facts and circumstances in the case raise a reasonable doubt as to whether such design existed", leaves the determination of the issue squarely up to the jury, in our opinion. Hence, we believe that it was not error to follow the form and substance of instruction No. 19 in the Brantley case.

The defendant's next proposition is that the trial court erred in not giving his requested instructions Nos. 1, 2, and 3, as to the defendant's right of self-defense, or justifiable and excusable homicide. The defendant relies solely upon the state's evidence as a predicate for this contention. There is nothing in the record other than that Starnes approached the defendant to talk to him after he had demanded $350. No conduct on Starnes' part was of a menacing nature, other than his approach to talk further as to why Swarb didn't leave Starnes and his wife, Earlene, alone. This conduct was not such as to raise reasonable ground to apprehend a design on the part of Starnes to kill Swarb or to inflict some great personal injury to him, or to form reasonably a basis for him to believe that there was imminent danger of Starnes' accomplishing any such purpose. In Bruner v. United States, 4 Ind.T. 580, 76 S.W. 244, it was said, in part, "where, on a prosecution for homicide * * * no self-defense was shown in an affirmative way, it was not error to refuse to charge on self-defense." Tharp v. State, 65 Okl.Cr. 405, 88 P.2d 652. We do not believe that the trial court erred under these conditions in its refusal to give the defendant's instruction on self-defense, or justifiable or excusable homicide. Oglesby v. State, 56 Okl.Cr. 286, 38 P.2d 32.

The defendant's third proposition is the trial court erred in its refusal to

give an instruction limiting the use of the evidence admitted in regard to other offenses. The offenses complained of was the shooting of Starnes and his wife. No request was made for such an instruction. Moreover, this evidence was clearly admissible without limitation as part of the res gestae. In Beam v. State, 18 Okl.Cr. 529, 196 P. 720, 723, this court said on a similar situation:

"It is also contended that the trial court erred in permitting the witness Betty Barnett (Deer) to testify that Albert Fisher shot at and wounded her.

"This evidence was admissible as part of the res gestae, the record disclosing that the shooting of the witness Barnett by Fisher was so interwoven with the assault made by Fisher and Beam upon the deceased, Deer, as to form merely a part of an integral transaction, covering a very limited period of time, without definite interruption, so that proof of the nature of the assault made upon Deer could not have been fully made without developing the fact that the witness Barnett was injured by one of the bullets fired from a pistol in the hands of Fisher.

"Under such circumstances, we deem the evidence complained of part of the res gestae, and for that reason competent. The following cases are in point: Tempy v. State, 9 Okl.Cr. 446, 132 P. 383; Tudor v. State, 14 Okl.Cr. 70, 167 P. 341."

See Tempy v. State, 9 Okl.Cr. 446, 132 P. 383–384; Sledge v. State, 40 Okl.Cr. 421, 269 P. 385; Boyer v. State, 68 Okl.Cr. 220, 97 P.2d 779, 781; Michelin v. State, 66 Okl. Cr. 241, 90 P.2d 1081. In a criminal prosecution, evidence which is relevant to the issue is not rendered inadmissible by reason of the fact that it tends to prove the defendant guilty of another crime other than the one charged in the information, where the crimes are so closely linked or connected in point of time or circumstances that proof of one cannot be fully made without developing the fact of the other, or they constitute one continuous transaction or part of the res gestae. In our opinion, it was, therefore, not prejudicial error to admit evidence of another shooting or other shootings that occurred at the same time and place, or to limit the same, under the conditions presented. The defendant herein suffered no prejudice by reason thereof, and error without prejudice is not reversible.

■■ Finally, the defendant urges the trial court erred in not sustaining his supplemental motion for new trial on grounds of newly discovered evidence. He alleges in support of said motion that at the time of the crime he was a mentally ill person, in that he was laboring under delusions of persecution, and did not know right from wrong. In support of the motion he attaches the affidavit of Dr. J. A. Rieger, M. D., a psychiatrist, who states that it is his opinion that the defendant at the time of the crime was mentally ill, and will grow progressively worse. It appears from the record that the basis for these contentions were known by the family of the accused or by exercise of reasonable diligence could have been known, and an examination could have been had to determine the issue of insanity at the time of the killing, if the same had been called to the attention of the court. In this connection it appears such information was in the possession of defendant's brother, and could have been used at the trial. It had been suggested to him in a letter from Mrs. Starnes. The slightest diligence would have disclosed some basis for the present contention, and the slightest interrogation of either Mrs. Starnes, or defendant's brother would have made it available. It is not enough to allege this evidence could not have been discovered under any reasonable diligence. It has been held that diligence used to ascertain the facts must be established. Here, no diligent efforts are plead or proven. Weiland v. State, 58 Okl.Cr. 108, 50 P.2d 741; Johnson v. State, 5 Okl.Cr. 1, 112 P. 760; Harper v. State, 7 Okl.Cr. 581, 124 P. 1116; Ball v. State, 47 Okl.Cr. 145, 286 P. 808. This court has repeatedly held

that a motion for new trial on grounds of newly discovered evidence is addressed to the trial court's sound discretion, and his ruling on the motion will not be disturbed unless there is a manifest abuse of discretion. Under these holdings and that of Mitts v. State, Okl.Cr., 345 P.2d 913–918, holding:

"* * * The question of insanity at the time of the killing being an affirmative defense, it must have been interposed during the trial. It is too late to assert it now. Grayson v. State, 85 Okl.Cr. 266, 188 P.2d 696; Ex parte Sisson, supra [90 Okl.Cr. 47, 210 P.2d 185]. (6) The matter of insanity at the time of the killing has been conclusively foreclosed to this defendant. In People v. Geary, 298 Ill. 236, 131 N.E. 652, the rule applicable herein was clearly stated: 'The sanity of an accused at the time he committed the offense is conclusively determined by the judgment of conviction, and cannot be again raised in a proceeding to have determined the question of his sanity before execution of capital sentence on him, in which case the only questions for trial were whether the defendant had become insane or a lunatic since the entry of the original judgment and whether he is a lunatic or insane at the time of impaneling the jury in that proceeding.' If the defendant could now assert insanity at the time of the killing in face of this record, the law would result in interminable confusion. Under the foregoing rule, the sanity of the defendant, as far as the merits of the case are concerned, was conclusively determined by the jury's verdict. Insanity is not a defense that can be reserved for a more propitious time. It must be timely made. * * *"

The question not being raised on the plea as to insanity, either as to its existence at the time of killing, or of present insanity at time of trial, and a total lack of diligence to present the same, the matter is precluded on a motion for new trial on the ground of newly discovered evidence. Certainly, the warden of the penitentiary, if he has any doubt of the mental condition of the defendant, will make inquisition as provided by law and have defendant committed to a mental institution for treatment.

Under the record herewith presented, we cannot say the trial court abused its discretion in denying the motion. The judgment is accordingly affirmed for the reasons hereinbefore set forth.

POWELL, P. J., and NIX, J., concur.