# R. B. CARPENTER v. STATE.

No. A-8623.   April 14, 1934.
Rehearing Denied June 22, 1934.
(33 Pac. [2d] 637.)

Geo. H. Giddings, Sr., and R. H. Morgan, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, for convenience hereinafter referred to as the defendant, was convicted of the larceny of an automobile and sentenced to serve a term of five years in the state penitentiary, and appeals.

An abstract of the testimony shows N. J. Fuqua, of Duncan, Stephens county, Okla., owned a Chevrolet sedan, and on the night of August 7, 1932, he and his wife

attended a show at the Palace Theatre in Duncan, leaving their car parked on Main street; when they came out about 10 o'clock the car was gone; when he left the car, he left the windows and ignition locked; the next time he saw what he identified as his car was in Purcell, Okla., in a garage; the car he examined in the garage had the same kind of casings he had on his car; the figure 2 on the motor number had been changed or mutilated and looked like an 0; the witness identified an aluminum plate on the dashboard under the hood of the car which showed a job No. 32559, and a body No. K1272, these being the same numbers on his bill of sale; the original number of his car was 3271568, and when he examined the car in the garage at Purcell, the number 2 had been changed to 0.

Orin Johnson, the sheriff of McClain county, stated he knew the defendant, Russell Carpenter; that on the 15th day of September, 1932, he and a Mr. Wilson were driving on the highway near where the defendant lived and saw the defendant driving the Chevrolet car alleged to have been stolen; while they were driving near the defendant's home, the defendant passed them one or more times driving the Chevrolet car the state claims was owned by Mr. Fuqua, and Mr. Fuqua testified it was stolen or taken without his knowledge or consent; two or three days after the defendant was seen driving the car near his home, a number of officers went to Mr. McCurdy's home, where they found the defendant; the reason they went to the McCurdy home was the car was parked in front of the McCurdy house; the defendant was not there at the time the officers arrived, which was about midnight; the defendant showed up at the McCurdy home about daylight; the witness had not seen him come, but he was arrested, and they took possession of the car on reports that it had been stolen. The defendant stated he bought the car from

a man named Wilder, whom he had met in Oklahoma City. Witness further stated defendant did not give very satisfactory statements as to how he came into possession of the car; defendant stated he traded a model A Ford in on the deal and had given a difference of $342, securing the amount by a note and mortgage, but defendant did not remember the provisions of the mortgage and could not tell when or where the payments were to be made, but stated they were to be made when he got the money.

Purman Wilson, county attorney of McClain county, stated he had known Russell Carpenter practically all his life; on the 19th of September, 1932, when the car was taken from the defendant, he went with Sheriff Johnston to the Carpenter home, and on to the McCurdy place where they found the car, and defendant was arrested; the defendant stated he had never seen the man J. W. Wilder before and had never seen him since he made the trade; that he had traded an old car and paid $342 and given a mortgage to secure this amount, but did not know if it had been recorded. Witness further stated when he took the car he checked the motor number, and it was 3071568.

Witness N. J. Fuqua was recalled, and on further cross-examination by the defendant stated he had seen the job number and body number only on the bill of sale; that he did not have the bill of sale with him at the trial and had never examined his car to look for any number on it.

Miss Erline Webster, called as a witness on behalf of the defendant, testified she was working in the agent's office, at Norman August 9, 1932, and they issued a license tag and certificate of title to J. W. Wilder on his application, the certificate being 3071568; that on the 10th of August, 1932, Wilder, accompanied by the defendant, Rus-

sell Carpenter, and a lady came to her office at Norman; the man who accompanied the defendant was the same man who had given his name as J. W. Wilder on the 9th, when she had issued him a license tag. Witness further stated when the man gave her his name as Wilder he stated he was a car salesman from Missouri, and asked how he could sell a car in Oklahoma. Witness could not identify the defendant's wife as the lady with the defendant and Wilder when they came to her office at Norman on August 10th.

Mrs. R. B. Carpenter, wife of the defendant, testified the man gave his name as Wilder who sold the car to her husband; that he came back about a month after the sale was made to collect a payment on the car, and her husband paid him the balance of $275; that was the last time she saw the man. The wife of the defendant testified she and her husband spent the entire evening at the home of Mr. McCurdy's near their place, and attended an ice cream supper the night of August 7th, the night it is alleged the car was stolen. Several witnesses were called to establish an alibi for the defendant, and all stated positively that the defendant was at the home of McCurdy from about dark the evening of August 7, 1932, up until 10:30 or 11 o'clock, some stating an hour later.

The defendant did not testify. The foregoing is, in substance, the testimony of both the state and the defendant.

It is not disputed by the defense that the car found in the possession of the defendant is the car that was taken from the witness Fuqua, but it is insisted by the defense that the defendant had nothing to do with taking the car and knew nothing about it being a stolen car; that the defendant purchased the car from a man who repre-

sented himself to be J. W. Wilder, from Missouri; the statement the state claims to have been made by the defendant to the sheriff and county attorney of McClain county indicates that defendant had traded an old model A Ford to a man by the name of Wilder and promised to pay $342 in money, making a note and mortgage to secure the payment, but he did not know when the note was to be paid, and did not know whether the note and mortgage had been recorded. The wife of the defendant, in her testimony, says that some time after they bought the car Wilder came to their home and her husband paid him the balance due on the car.

Seven errors have been assigned by the defendant as grounds for reversal. These errors will be considered as presented by the defendant in his argument.

The defendant in his argument urges that the court erred in giving its sixth instruction, which instruction is as follows:

"You are instructed, gentlemen, that when the fact of the theft has been shown, and the question is whether or not the defendant committed it, his possession, if you find beyond a reasonable doubt, he had possession thereof, of the stolen property at a time not too long after the stealing is circumstance for the jury to consider and weigh in connection with all the other facts in the case. Its significance will vary with its special facts, and with the other facts in the case, among which are the nearness or remoteness of the proved possession of the stolen property; the nature of the property as passing rapidly from hand to hand, or not, together with such other facts and circumstances as would reasonably influence the opinion of the jurors as to the guilt or innocence of the defendant."

The defendant insists that this instruction is erroneous in that it fails to use the word "unexplained." In

Jackson v. State, 22 Okla. Cr. 338, 211 Pac. 1066, 1067, in the sixth paragraph of the syllabus, the court said:

"Where there is evidence tending to explain the possession of defendant of stolen property, the trial judge should give an instruction covering this theory of defense. Such theory is not covered by an instruction relating wholly to inferences of fact arising from unexplained possession."

This court has repeatedly held that the possession of recently stolen property unexplained is a circumstance to be considered and given such weight as the jury may see fit, and the jury is the sole judge as to what weight shall be given the circumstances, and, even if the defendant makes no attempt at the explanation of the possession, the jury would not be authorized to convict unless from all the facts and circumstances of the case it believed the defendant guilty. Chrisman v. State, 22 Okla. Cr. 52, 209 Pac. 656; Blumhoff v. State, 29 Okla. Cr. 4, 231 Pac. 900.

In Shaw v. State, 13 Okla. Cr. 511, 165 Pac. 617, in the first paragraph of the syllabus, this court in part said:

"Possession alone is not sufficient proof of the crime to warrant a conviction, when a reasonable explanation of the possession of same is made and the circumstances tend to support the explanation."

The defendant insists that it was the duty of the court, when it instructed the jury on the possession of recently stolen property, to have given an affirmative instruction to the jury as to the effect of this explanation and its reasonableness, if they found it was reasonable.

Instruction 6, complained of by the defendant, is a correct instruction as far as it goes, but it does not fully instruct the jury as to the law applicable to the defense of the defendant and his explanaiton of the possession of

the recently stolen property. If, when the court instructed the jury, the defendant desired an additional instruction upon his theory of the case it was his duty to have prepared the same and requested the court to give it. In Ford v. State, 52 Okla. Cr. 321, 5 Pac. (2d) 170, 171, this court held:

"If the defendant desires special instructions in the trial of a criminal case, he is required by the provisions of our criminal procedure to present in writing to the court the instructions desired, and it is not error for the trial court to omit to instruct upon every possible question under the defendant's theory of the case, when he has not requested such instructions."

The defendant further complains that the court erred in giving instruction No. 10. An examination of that instruction shows that it is an approved instruction of this court, and has been followed in substance since the case of Tucker v. Territory, 17 Okla. 56, 87 Pac. 307, was decided by this court.

There are other errors assigned by the defendant and urged as grounds for reversal of this case. A careful study of the record shows they are without merit, and that it is not necessary to discuss them in detail. Considering the instructions of the court in their entirety, the court correctly stated to the jury the law applicable to the facts in the case. When the record is studied, the explanation made by the defendant when the car was found in his possession clearly shows he is not stating the facts. It is the same old story, the defendant claims he purchased the car from a man by the name of Wilder, but he does not know where Wilder lives. He claims Wilder stated he lived at a certain number on Annabaxter street, in the city of Joplin, Mo. The testimony shows that Annabaxter street does not have the number given by the defendant.

The number of the motor of the car had been changed, and every fact and circumstance tends to show the guilt of the defendant.

Under the testimony in this case, the jurors under their oath could not have done other than find the defendant guilty. There are no errors in the record that justify this court in reversing this case.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.