## WILKERSON, v. STATE.

No. A–11837.

Criminal Court of Appeals of Oklahoma.

Jan. 13, 1954.

740

Sigler & Bruce, Ardmore, Jerome Sullivan, Duncan, for plaintiff in error.

Clinton D. Dennis, County Atty., Marlow, Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge. :

Plaintiff in error Herschel Wilkerson, defendant below, was charged by information in the district court of Stephens county, Oklahoma, with the crime of receiving stolen property, Title 21, § 1713, O.S.1951, alleged to have been committed on or about the 4th day of December 1951 about a mile west of Duncan, Oklahoma, in said county and state. He was tried by a jury and convicted; the jury being unable to agree on the punishment left the matter of punishment to the trial court which fixed his punishment at 3 years in the State Penitentiary and a fine of $250; judgment and sentence was entered accordingly, from which this appeal has been perfected.

The record herein discloses that the Mack Oil Company warehouse located in Duncan, Oklahoma, was broken into and a quantity of retipped drilling bits were stolen. The record further discloses that the warehouse was entered on the 3rd day of December for the purpose of putting other bits therein, and all of the bits were there on the 3rd day of December. On the morning of the 4th day of December 1951 the burglary of the place was discovered.

The first contention of the defendant herein is that the verdict is not sustained by the evidence and is contrary to law. Briefly the evidence on behalf of the state is as follows.

George Robert Elliott, Jr., testified that he was a resident of Shawnee, Oklahoma; that he was commonly known by the nickname of Bobby; that he was 18 years of age; that on or about December 1, 1951 together with Bill Megehee, his brother Billy, Don Robinson, Ernie Farris and Don Swift they left Shawnee and went to Duncan, Oklahoma, in Bill Megehee's car. They arrived in Duncan after dark; that they broke into a place located on the north side of town and stole 28 drilling bits which they loaded onto the company's pick-up and drove about a mile west of town and unloaded them by the side of the road. Thereafter they drove the pick-up back; they then came back to the Consumers Service Station and Elliott called Herschel Wilkerson between 2:00 and 4:00 o'clock in the morning. He said he told Wilkerson he had 28 retipped drilling bits, and Wilkerson told him it would be in the morning before he would do anything about it and to go back and stay with the boys until he came out the next morning, which he did between 7:00 and 8:00 o'clock. Elliott testified, the bits were loaded in Wilkerson's car, and that he and Bill Megehee went to Wichita Falls, Texas, with Wilkerson. He testified that they stopped at some little town between Wichita Falls, Texas, and Duncan, where Wilkerson removed the serial number from the bits with a chisel and a hammer; that they took them on to Wichita Falls, Texas; and he let them out at a beer joint telling them he would pick them up later. About an hour and fifteen minutes later Wilkerson came back and said he had disposed of the bits; that they returned immediately to Duncan; that they came to the Red Horse Inn where the other boys were waiting for them. They were informed to meet Wilkerson a mile west of town and he would pay them for the stolen

bits; in about an hour they did meet him a mile west of town and he agreed to pay them $500, $300 in cash and he would owe them $200. After they were paid for the bits they immediately returned to Shawnee. He testified that they had broken into a place at Seminole, another place at Holdenville and stolen both new and retipped bits some of which they had sold to Herschel Wilkerson. In fact, he related that they had sold him drilling bits as many as 6, 7 or 8 times; and also had sold him some metal; and that at the time they sold him these bits and metal he knew they were stolen.

The testimony of William Megehee and Billy Elliott is substantially the same as that of Bobby Elliott as to the facts of the crime herein involved. In addition thereto the record disclosed a long series of admitted other burglaries by the thieves involving other stolen bits and property. In this connection Megehee testified in addition to the foregoing facts he sold the defendant stolen bits 4 times. He related that they had stolen 15 bits from Lee Hawkins and sold them to the defendant, and that 9 retipped bits were taken from Ratliff City and sold to the defendant. On another occasion he said they stole 30 bits from a place in Velma, Oklahoma, and they sold them to the defendant. All of the said last named transactions, he testified, took place in November 1951.

On the proposition of whether Mr. Wilkerson knew the bits were stolen, he testified that Wilkerson did know that they were stolen. When they stole the Lee Hawkins bits he testified that Wilkerson told Bobby Elliott he thought he knew where the bits came from. These 3 transactions and the one herein involved all together made 4 thefts and sales of the stolen property as testified to by Megehee.

To this evidence the defendant interposed a demurrer and motion for a directed verdict, which was overruled, with exception.

Herschel Wilkerson testified in his own behalf that he was 39 years of age; that he had a wife and one son 9 years old. He related at one time he had been employed by the Halliburton Oil Well Cementing Company, that he had been in the drilling business for a while but in the past 2 years he was engaged in the business of retipping bits and trading and exchanging them. He denied that he had bought the 28 bits involved in the instant case or that he had made the trip to Wichita Falls on December 4, 1951 as testified to by Megehee and Elliott. His defense was that of an alibi. He testified that on December 4 he was in Ardmore; that he left there around noon, that he was with a friend there with whom he had worked for about 6 weeks. He said he went there for the purpose of seeing if he could buy some bits at wholesale or if he might know some one who had some nubs. He was advised over the telephone that this party was out of town and they didn't expect him back soon so he loafed around Ardmore most of the afternoon and left Ardmore he thought about 8:00 or possibly 9:00 o'clock and drove up to Earls Motel. There he ran into J. B. Sides whom he had known prior thereto, that they had a couple or three beers and visited for about 3 hours; that they stayed all night there in cabin No. 4; that he paid the bill the next morning and came back to Ardmore. He offered in evidence a receipt dated December 3, 1951 showing that Earls Motel had received $4 from him for rent on a cabin. He further testified that about 9:00 o'clock in the morning of December 4, he took Sides home back to Ardmore; that while he was in Ardmore on December 4, 1951 he bought some gasoline on a credit card at the Broadway Service Station at Ardmore. An invoice covering the purchase was admitted in evidence. On cross-examination he said he did not know what time of day it was he bought the gasoline but he admitted he paid cash for it. He then said he left Ardmore and drove over to Ringling, back south of the highway that goes east of Ryan up through Waurika, through Temple and Walters and arrived home about 6:00 o'clock that afternoon.

Wilkerson admitted that on or about November 10, 1951 he bought 15 retipped bits from G. R. Elliott and gave him two checks one for $80 and one for $70. He admitted it appears on the face of the checks that they were given for tool repair. On cross-examination he admitted that Elliott and

Megehee had not repaired any tools for him. The record shows that retipped drilling bits were worth from $25 to $40 each. The inadequancy of price paid for said bits is apparent.

The defendant offered in support of his alibi the testimony of J. B. Sides who testified he had known him for some time and seen him probably 15 or 20 times; that on December 3 he saw Wilkerson about 8:30 p. m. at the Sky View Drive-in near Springer, Oklahoma. He related he was in Earls Place having a conversation with Earl when Wilkerson came in; that they stayed there and talked until about 11:00 or 12:00 o'clock at which time Wilkerson asked him to stay all night with him, stating that he would take him back to Ardmore the next morning; he said that would be O.K., and so they registered and stayed all night. He testified they got up about 8:00 o'clock the next morning and had breakfast at Truett's Place located on the double highway on the west side of Ardmore.

The foregoing constitutes in substance the evidence of the case, after which the defendant again demurred and moved for a directed verdict of not guilty. Both the demurrer and the motion were overruled with exceptions.

The defendant's contention is that the evidence was insufficient to sustain the conviction. This argument is predicated upon the proposition that the testimony of the 3 burglars was uncorroborated and therefore the state's evidence was insufficient to support the conviction. They rely upon the cases of Stinnett v. State, 58 Okl. Cr. 229, 52 P.2d 113; and Yeargain v. State, 57 Okl.Cr. 136, 45 P.2d 1113. In the Stinnett case this court stated in its conclusion unless the state can produce further testimony tending to connect the defendant with the crime independent to the testimony of the uncorroborated accomplices the lower court should dismiss the same. In the Yeargain case, supra, the court held that under the facts of that case the evidence established that the accused and the thieves were accomplices and that therefore it should be reversed for want of sufficient evidence to corroborate the testimony of the thieves. Therein the court said:

"Ordinarily, the thief is not an accomplice of one who receives the stolen property, knowing the same to have been stolen, but where there is a previous arrangement between the thief and the receiver for one to steal and the other to receive, and pursuant to such plan the property is stolen and received, they are principals, and the receiver is an accomplice of the thief, and the thief is an accomplice of the receiver."

To the same effect is Smith v. State, 78 Okl. Cr. 375, 148 P.2d 994. There is not even a slight indication that the parties herein involved were accomplices, hence the defendant's theory that he was an accomplice with the thieves is wholly without merit. The Attorney General points out that the fact that Bobby Elliott and Bill Megehee went to Wichita Falls, Texas, with the defendant where he sold and delivered the drilling bits in question does not make them accomplices since the transaction was subsequent to the theft of the bits in question. Such was held in the case of Mercer v. State, 92 Okl.Cr. 37, 219 P.2d 1035; also Yoder v. State, 78 Okl.Cr. 36, 143 P.2d 160, and numerous other cases to the same effect as cited in Mercer v. State, supra. Herein the theft and asportation had been completed by the thieves before the intervention of Herschel Wilkerson who received the stolen bits and then transported them to Wichita Falls, Texas, for sale.

The next contention of the defendant is that the court erred in giving instruction No. 3 over the objection of the defendant as follows:

"You are instructed that in this case there has been some testimony offered that the defendant on other occasions prior to this date in question, the 4th day of December, 1951, bought other stolen property. You are instructed that this evidence is admissible only on the question of defendant's intent."

It is contended by the defendant that this instruction greatly confused the jury and

made it appear that plaintiff in error had been engaged in an unlawful business, and such instruction tended to place the burden on the plaintiff of proving his innocence instead of the state proving him guilty beyond a reasonable doubt. The defendant relies upon the case of Wilson v. State, 55 Okl.Cr. 22, 24 P.2d 296. We have examined that case and find the instruction therein contained bears little if any similarity to the one herein given. We are of the opinion that the same is not in point with the situation herein involved. This contention is without merit for the rule is correctly stated in 22 C.J.S., Criminal Law, § 691, p. 1129, as applicable to receiving stolen goods. Therein it is said:

"Evidence of the receipt of other stolen goods by accused at about the same time as, or at a time not too remote from, the receipt in question, and under circumstances connected therewith, is admissible to show guilty knowledge, intent, * * *."

In a case of this kind evidence which tends to show guilty knowledge and intent is clearly admissible since guilty knowledge and intent are essential elements in proof of receiving stolen property. Guilty knowledge is so closely allied to intent you could hardly prove guilty knowledge without establishing intent, or vice versa. The foregoing rule has been followed in a number of receiving stolen property cases in Oklahoma, and evidence of other similar crimes was admitted on the foregoing theory. Mason v. State, 60 Okl.Cr. 427, 65 P.2d 203; Holloway v. State, 58 Okl.Cr. 100, 52 P.2d 109; Heglin v. State, 56 Okl.Cr. 364, 40 P.2d 41, wherein it was held, contemporaneous possession of other stolen property is admissible on the question of intent and guilty knowledge, where the charge is receiving stolen property; Lordi v. State, 47 Okl.Cr. 102, 287 P. 1083; Paramore v. State, 47 Okl.Cr. 140, 286 P. 811; Winfield v. State, 44 Okl.Cr. 232, 280 P. 630; Pringle v. State, 32 Okl.Cr. 187, 239 P. 932. In Walker v. State, 82 Okl.Cr. 352, 170 P.2d 261, 262, this court said:

"The record reveals many facts and circumstances which warranted the jury in reaching the conclusion of the guilt of the defendant. This property was bought at a place other than where property of his kind is generally sold. An inadequate price was paid for the same. It was sold near night time. The jury had the right to take into consideration the fact that the defendant and his wife had bought other property from Myers, and under suspicious circumstances."

Admittedly the transaction herein involved was not the defendant's first under conditions similar to those involved in the Walker case. We are of the opinion that the defendant's own admission of a prior transaction with the thieves when measured by the principle of the Walker case supra, shows he was engaged in an unlawful business and the circumstances thereof were sufficient to apprise him of such. Instruction No. 3 did not place the burden on the defendant of proving his innocence. It merely sought to restrict the state's evidence in favor of the defendant, of which he had no right to complain.

We are further of the opinion that instruction No. 3 as was said in Carpenter v. State, 56 Okl.Cr. 76, 33 P.2d 637, 639, in a similar situation was "incomplete but not erroneous", and further, "if, when the court instructed the jury, the defendant desired an additional instruction upon his theory of the case it was his duty to have prepared the same and requested the court to give it". Ford v. State, 52 Okl.Cr. 321, 5 P.2d 170, 171. Instruction No. 3 is by no means a model instruction. We are of the opinion that instruction No. 3 should have been enlarged including in keeping with the defendant's theory (after eliminating the last line thereof), the proposition to the effect, "you are instructed that the defendant herein specifically denies having received the stolen property but if you find from the evidence to the contrary, then and only in that event, you may consider evidence of other alleged offenses for the sole and only purpose of determining guilty knowledge and intent" of the defendant in receiving the stolen property for which he is on trial. This instruction is in con-

formity with the principles of limitation set forth in Smith v. State, 3 Okl.Cr. 629, at page 633, 108 P. 418, at page 419, wherein the late Judge Doyle made the following observation:

"Upon the subject of motive or intent, other transactions tending to prove its criminal existence, even though they may involve other offenses, may be given in evidence against the defendant, but such evidence must be so limited and restricted as to leave the jury only at liberty to use it to discover the motive actuating the defendant in the act for which he is on trial."

This limitation applies in the use of other transactions, in the discovery of guilty knowledge and intent, where the accused is charged with knowingly receiving stolen property. Ellis v. State, 54 Okl.Cr. 295, 19 P.2d 972. In Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451, we quoted from State v. Rule, 11 Okl.Cr. 237, 144 P. 807, as to the procedure that should be pursued in such cases. Therein it was said, 88 Okl.Cr. at page 320, 203 P.2d at page 463:

" 'Where evidence is offered tending to prove that the defendant has committed an offense other than that for which he is on trial, good practice requires that the prosecuting attorney should state the purpose for which the evidence is offered, and, if it is admissible for that purpose, the trial court should instruct the jury as to the purpose for which they may consider it.'

"And we are of the opinion that such instruction should be given at the time the evidence is offered as well as that it should be covered in the general instructions at the conclusion of the trial."

Carter v. State, 6 Okl.Cr. 232, 118 P.2d 264. In a close case the failure of the trial court to limit the jury's consideration of other unlawful transactions would constitute ground for reversal, particularly where possession is denied. But this is not such a case. This defendant's guilt is clearly evident and is made manifest by his own admission of prior transactions with the thieves herein involved, evidenced by 2 checks for $70 and $80 given in payment for 15 stolen bits on November 10, 1951, said checks containing on their faces a palpable falsehood to cover up the crime. We are therefore of the opinion that this point is not well taken since both knowledge and intent were essential elements of the offense, and the evidence of the other such transaction was admissible for the purpose of proving both of said elements. The trial court's failure to enlarge the instruction in this case clearly constitutes harmless error under the provisions of Title 22, § 1068, O.S.1951, since there is no miscarriage of justice involved herein.

Finally the defendant contends that in view of the fact that the testimony of the thieves and admitted burglars was not corroborated, and in view of the testimony of the plaintiff in error to the effect that he had never been charged with a crime prior to this one and the testimony when viewed in light of the testimony of J. B. Sides, the receipts for the purchase of gasoline in Ardmore on the day the offense was alleged to have been committed, he cannot see how this conviction can be upheld by this court. In this connection this constitutes a further attack upon the sufficiency of the evidence which we believe we have sufficiently covered hereinbefore. Furthermore, it has been repeatedly held by this court as in Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Criminal Court of Appeals will not interfere with verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts."

Other objections were raised but they are without merit.

This court will take judicial notice of its own records. This is not the first and only transaction where the defendant Herschel Wilkerson has been involved in receiving stolen property. In the case of Dickey v. State, Okl.Cr., 266 P.2d 480, it

appears that he was the contact man between the thieves and Dickey. In fact a review of these two records discloses that Wilkerson was quite active with these young boys as a fence in receiving stolen property. An examination of the Dickey case in comparison with this record will disclose that the thieves first contacted Herschel Wilkerson. We cannot lose sight of the fact if there were no fences or purchasers for stolen property there would not be so much inducement for traffic in the same. We are of the opinion that Herschel Wilkerson was the moving spirit in these unlawful transactions and that he had been involved in such affairs on numerous occasions under conditions that would clearly import illegality. His purchase of the merchandise from mere youths, of drilling bits which he knew they did not possess of lawful right at a secluded spot on the highway from a ditch for an altogether inadequate price convicts him of receiving the stolen property with guilty knowledge and intent to be a participant in this unlawful transaction. For all the above and foregoing reasons the judgment and sentence herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.