## DICKEY v. STATE.
### No. A-11836.

Criminal Court of Appeals of Oklahoma.
Jan. 20, 1954.

482

Jerome Sullivan, Duncan, Paul D. Sullivan, Durant, Goins & Smith, Ardmore, for plaintiff in error.

Clinton D. Dennis, County Atty., Duncan, Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error Roy W. Dickey, Jr., defendant below, was charged by information in the district court of Stephens county, Oklahoma, with the crime of receiving stolen property, Title 21, § 1713, O.S.1951. The crime was allegedly committed on November 25, 1951, 5 miles west of Duncan, Oklahoma, in the aforesaid county. The defendant was tried by a jury, convicted; the jury being unable to agree on the punishment, the same was fixed by the trial court at a term of 3 years in the Penitentiary and a fine of $250; judgment and sentence was entered accordingly, from which this appeal has been perfected.

The facts developed by the state and relied on for the conviction are briefly as follows. On November 24, 1951 in the afternoon at about 4:00 o'clock p. m., William Megehee, J. D. Bottoms, Bob Harris, A. J. Taylor and Billy Elliott of Shawnee, Oklahoma, as testified to by the first four, decided to go to Duncan, Oklahoma, for the purpose of committing a burglary of the Mack Oil Company warehouse. The object of the burglary was to steal some Hughes Tool company bits, leased to the oil company for drilling purposes. The burglars arrived in Duncan about 5:00 o'clock p. m., and at about midnight went to the Mack Oil Company warehouse located in Duncan, and stole 50 Hughes drilling bits and removed them from the warehouse to a point about 4 miles west of Duncan where they were hidden under a culvert. They contacted one Herschel Wilkerson of Duncan, Oklahoma, by telephone about buying them, and he informed them that he could not handle the bits until after dark that day, the 25th of November 1951. The testimony of the thieves was that about 7:00 p. m. on the evening of November 25, 1951, they met Wilkerson and defendant Roy W. Dickey, Jr., of Wichita Falls, Texas, at the Red Horse Drive-in. The self-confessed thieves testified, they then went in Dickey's pick-up and Wilkerson's car to the hiding place of the bits where 42 bits were loaded into Dickey's pick-up and 8 of them were loaded into Wilkerson's car. They related that thereafter they drove about a mile from the point of delivery where payment was made therefor in cash and by check. The parties then went back to Duncan and returned to Shawnee, where Megehee, Elliott and Bob Harris (the last, to whom the check was made payable), picked up Megehee's wife and drove to Wichita Falls, arriving there about 7:00 or 8:00 o'clock a. m., in order to get Dickey's check cashed, which Dickey cashed himself. They testified they had another transaction with Dickey prior to the one in question and could not get his check cashed in Shawnee, so they drove to Wichita Falls for that purpose. They testified that the deal netted them $168 apiece. Megehee testified they received $17.50 apiece for the bits. The record shows new bits cost about $160 each, and re-tipped bits cost about $35 each. Megehee and Elliott testified they sold Dickey 22 other stolen bits in the other deal which took place about 2 weeks prior to this transaction, in which he gave them a check they could not get cashed in Shawnee. They testified that these bits involved in the prior sale were stolen from the warehouse in Velma, Oklahoma, and were delivered in the nighttime on a country road. They testified that in this Velma burglary they stole 30 bits, but 8 of them were delivered to Wilkerson. None of the stolen bits were ever recovered, or traced to the defendant's possession except as hereinbefore testified to by the 5 thieves.

A demurrer and motion for directed verdict was overruled.

The defendant's defense was an alibi. Dickey testified that he was born in Electra, Texas; a graduate of the Gladewater, Texas, high school; he attended Kemper Military College for 2 years at Booneville, Missouri. Dickey related that he then went to the army as an engineer and served 2 years overseas in the Pacific; was discharged from the army in December 1945, after which he went to school at Oklahoma University. After completing his university training he went into the business of re-tipping oil field drilling bits. Dickey admitted that he knew a man by the name of Wilkerson in Duncan, who was a retipper; that they often traded and borrowed bits from each other as well as occasionally buying bits from each other. Dickey denied that he bought 42 re-tipped bits from Megehee et al., on the road near Duncan, Oklahoma, on the 25th day of November 1951. The defendant testified that he did not know the thieves Megehee, Elliott, Taylor, Bottoms or Harris; that the first time he ever saw them was at the preliminary hearing in January of 1952. He further testified he went fishing on Sunday the 25th day of November 1951 at Possum Kingdom, Texas, about 80 miles southwest of Wichita Falls, leaving about 1:00 o'clock. On this trip he said he was accompanied by Harold Hulsey and a Richard McComb, of Wichita Falls. He testified that they went in his car and took a boat, motor, trailer, lantern, fishing equipment and a couple of carbide cans for fire. He said that they fished until about 10:00 or 10:30 p. m. and left, arriving back in Wichita Falls about midnight. He testified he knew that it was the 25th day of November 1951 because it was the first Sunday after Thanksgiving which was his dad's birthday and that they had Thanksgiving dinner. On Saturday he said they had tickets for a football game but it was rained out and they did not go. The next day was Sunday and it cleared off, and they went fishing to Possum Kingdom. He denied that he had any transaction with the state's witnesses in connection with any bits. On cross examination he admitted that he had bought some bits from Herschel Wilkerson in the month of November 1951.

Harold Hulsey testified in behalf of the defendant to the effect that he had known the defendant 6 years; had done a lot of hunting and fishing with him, and that on Sunday the 25th of November 1951 together with Richard McComb he accompanied the defendant to Possum Kingdom, 80 miles from Wichita Falls, where they fished for quite awhile after dark, loaded the boat and got back to Wichita Falls about 12:00 o'clock midnight.

Roy McComb testified that he had known the defendant about a year and a half; that he went fishing with the defendant and Harold Hulsey on the 25th day of November 1951 at the Possum Kingdom lake. He testified that they fished until after dark. They got back to Wichita Falls about 12:00 o'clock at night. He testified he fixed the date as November 25, 1951 by reason of the fact that he had just got in from a deer hunting trip that morning.

In addition to the foregoing the defendant had Mr. Hammet Vance, sheriff in Wichita Falls, Oral Jones, Vice President of the City National Bank of Wichita Falls, and Grover Bullington, an insurance man of Wichita Falls, Harry Browning, L. H. Ward and R. O. Wood, all testified as to the defendant's good character and reputation in and around Wichita Falls, Texas. The defendant's motion for a directed verdict was properly overruled.

[redacted] Furthermore, it is apparent that the jury who saw and observed the witnesses, believed the thieves who stole this property, which the defendant is alleged to have received *knowing the same to* have been stolen, and their evidence is entirely sufficient to support the conviction, under proper instructions.

[redacted] The next contention of the defendant is that the court erred in refusing to instruct the jury, upon motion of the defendant, that in the event they found him guilty, they must assess the punishment. This complaint is directed at instruction No. 10 reading as follows:

"Should you find the defendant guilty, from the evidence, under the instructions, beyond a reasonable doubt, you may assess his punishment therefor within the provisions of the law set out herein. Should you be unable to agree upon the punishment you shall so state in your verdict and leave same to be assessed by the court."

Title 22, §§ 926, 927, O.S.1951, provide as follows:

"926. In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided.

"927. Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

Herein the verdict reads as follows:

"We, the jury, drawn, empaneled and sworn in the above entitled cause, do upon our oaths find the defendant Roy Dickey, Jr., guilty as charged in the information filed herein and being unable to agree on the punishment, leave the same to be assessed by the Court."

In Ladd v. State, 89 Okl.Cr. 294, 207 P. 2d 350, 351, the rule applicable hereto was stated in syllabi 2, 3, 4:

"2. Under Tit. 22 O.S.1941 §§ 926 and 927, it is the duty of the court upon request of defendant to instruct the jury to fix the punishment to be assessed the defendant upon a verdict of guilty, giving them an opportunity to pass upon the question as to the punishment to be inflicted.

"3. The court should instruct the jury that if they find the defendant guilty of the crime charged, beyond a reasonable doubt, and after due deliberation are unable to agree on the punishment, they should so state in their verdict and leave the punishment to the court.

"4. When a verdict is returned into court, stating that the jury finds the defendant guilty and is unable to agree upon the punishment, the court has the right to fix the punishment within the limitations provided by law, even though defendant had requested the court to instruct the jury to fix the punishment."

The trial court on the defendant's motion should have instructed the jury as set forth in syllabi 3 of the Ladd case supra. So also, it was the duty of the defense counsel to have prepared for submission to the trial court such an instruction. In Pulliam v. State, 61 Okl.Cr. 18, 65 P.2d 426, 427, this court said in part:

" * * * in the absence of such request a conviction will not be reversed, unless this court is of the opinion, in the light of the entire record, including the instructions given, that the defendant may have been prejudiced by the instruction complained of."

Carpenter v. State, 56 Okl.Cr. 76, 33 P.2d 637; Ford v. State, 52 Okl.Cr. 321, 5 P.2d 170, 171. We are unable to see from the jury's verdict herein that the defendant was prejudiced by the court's failure to instruct the jury as set forth in syllabus 3 of the Ladd Case. It appears herein that the only logical inference which can be drawn from the verdict is that they found the defendant guilty (after due deliberation), and after being unable to agree on the punishment, left the same to be assessed by the trial court. Nevertheless, when a request had been made for the jury to fix the punishment in the verdict, it was error for the trial court not to give instruction 3 prescribed in the Ladd case, supra. But all error is not reversible error but only that which results in injury to a substantial right, is reversible error. Title 22, § 1068, O.S.1951. This fact is so recognized in the Ladd case as set forth in syllabi 4 supra. The point of the Ladd

case is that first under the provisions of §§ 926, 927, 22 O.S.1951, it is the duty of the trial court on proper request of the defendant to instruct the jury in the language of syllabi 3 supra. But where the trial court fails to so instruct the jury, or if in instructing them it ineffectively does so, as in the case at bar, and notwithstanding, the jury's verdict indicates after due deliberation they were unable to agree, and the matter of punishment was left to the trial court, there may be technical error but no resulting injury by reason of the propriety of the jury's verdict. However if the trial court refuses to so instruct under the provisions of syllabus 2 of the Ladd case or does so ineffectively and virtually invites the jury to leave the matter of punishment to the trial judge, and the jury returns a verdict of guilty without indication of deliberation and leaves the punishment to the trial court then error and injury may be the result. See Lyons v. State, Okl.Cr., 234 P.2d 940, not yet reported in state reports, for a case in point with the latter situation. But such is not the case herein, hence the error complained of was harmless.

■ Next the defendant complains that the trial court erred in giving instruction No. 3 reading as follows, to wit:

"You are instructed that in this case there has been some testimony offered that the defendant, on other occasions prior to this date in question, the 25th day of November, 1951, bought other stolen property. You are instructed that this evidence is admissible only on the question of defendant's intent."

In this connection he complains that 2 of the confessed burglars were permitted to testify to a prior sale to the defendant of stolen drill bits, which occurred about 2 weeks before the crime herein involved. This transaction involved 30 bits as hereinbefore set forth, 22 of which the defendant allegedly purchased. He contends that this evidence was inadmissible first, as involving another crime not connected with the one charged herein, and further that the state made no effort to bring the case within the well known exceptions. These exceptions appear in 22 C.J.S., Criminal Law, §§ 683 to 689 inclusive. Those applicable herein are: (3) where guilty knowledge is in issue or an element of the crime charged; (4) where the evidence of the other crime tends to show intent * * *, etc. He further contends that the trial court's attempt to instruct that such evidence was admissible on the theory of intent was erroneous since under his theory of the case intent was not an issue herein. This contention specifically is that he did not buy the goods believing them to be the object of a valid purchase but that he did not buy them at all; that he never saw the burglars until they appeared against him at the preliminary hearing; and in support of this defense he offered proof of an alibi, that he was in Texas on a fishing trip therefore, he says, intent was not an issue. (Herein lies a fundamental difference in the case at bar and Wilkerson v. State, Okl.Cr., 265 P.2d 739. In the Wilkerson case the defendant admitted he knew the parties and had had other transactions with them involving the admitted issuance of checks in payment for similar stolen property bought under similar conditions, no such admission appears herein.) Nevertheless, we cannot agree with the defendant's foregoing contention that intent was not an issue, for there are two elements in receiving of stolen property cases that the state must prove first, that the property was stolen and second, that it was received knowing the same to have been stolen. When it has been established that the property was stolen, and received by a person other than the thief, then evidence of the receipt of other stolen property is admissible to establish guilty knowledge that they were stolen and the intent with which they were received. The fact an alibi is interposed as a defense does not lessen the state's burden of proof as to the essential elements of the crime. We know of no rule of law, other than a confession of guilt as to these elements, that will relieve the state of this burden. The rule is correctly stated in 22 C.J.S., Criminal Law, § 691, p. 1129:

"Evidence of the receipt of other stolen goods by accused at about the same time as, or at a time not too remote from, the receipt in question, and under circumstances connected therewith, is admissible to show guilty knowledge, intent, * * *."

This rule has been followed in a number of cases of receiving stolen property in Oklahoma. Mason v. State, 60 Okl.Cr. 427, 65 P.2d 203; Holloway v. State, 58 Okl.Cr. 100, 52 P.2d 109; Heglin v. State, 56 Okl.Cr. 364, 40 P.2d 41; Lordi v. State, 47 Okl.Cr. 102, 287 P. 1083; Paramore v. State, 47 Okl.Cr. 140, 286 P. 811; Winfield v. State, 44 Okl.Cr. 232, 280 P. 630; Pringle v. State, 32 Okl.Cr. 187, 239 P. 932. We are of the opinion that herein, the record on knowledge and intent had been made as of right, it should have been under the state's case in chief.

However, we are of the opinion that instruction No. 3 as was said in Carpenter v. State, supra [56 Okl.Cr. 76, 33 P.2d 639], in a similar situation, was "incomplete but not erroneous", and further, "if when the court instructed the jury, the defendant desired an additional instruction upon his theory of the case it was his duty to have prepared the same and requested the court to give it". Ford v. State, supra. Ordinarily this would dispose of this point, but instruction No. 3 is by no means a model instruction. We are of the opinion that instruction No. 3 should have been enlarged in keeping with the defendant's theory (after eliminating the last line thereof), to the effect, You are instructed that the defendant herein specifically denies having receiving the stolen property but if you find from the evidence to the contrary, then and only in that event, you may consider evidence of other alleged offenses for the sole and only purpose of determining whether at the time of allegedly receiving said stolen property the defendant knew the same to have been stolen. This instruction is in conformity with the principles of limitation set forth in Smith v. State, 3 Okl.Cr. 629, at page 633, 108 P. 418, 419, wherein the late Judge Doyle made the following observation:

"Upon the subject of motive or intent, other transactions tending to prove its criminal existence, even though they may involve other offenses, may be given in evidence against the defendant, but such evidence must be so limited and restricted as to leave the jury only at liberty to use it to discover the motive actuating the defendant in the act for which he is on trial."

This limitation applies in the use of other transactions, in the discovery of guilty knowledge and intent, where the accused is charged with knowingly receiving stolen property. Ellis v. State, 54 Okl. Cr. 295, 19 P.2d 972. In Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451, we quoted from State v. Rule, 11 Okl.Cr. 237, 144 P. 807, as to the procedure that should be pursued in such cases. This procedure was set out in Wilkerson v. State, supra. We do not deem it necessary to repeat the same herein. In the Wilkerson case we said, in a close case the failure of the trial court to limit the jury's consideration of other unlawful transactions, would constitute grounds for reversal, particularly where receipt and possession is denied. By this we do not mean to say this defendant is innocent of the charge against him. We intend to convey the grave responsibility that rests on the trial courts in cases of receiving stolen property, particularly where the defendant denies knowing the thieves or having had any transactions with them, and where the property is not traced to the defendant by any other evidence than the testimony of the thieves themselves. Certainly, where the allegedly stolen property was not found in the defendant's possession, and the defendant established a strong alibi and good reputation, we are of the opinion that the defendant's rights should be so buttressed by proper instructions that a conviction might not be the result of either the jury's misunderstanding of the law or the product of its speculation. Moreover, the necessity of such is emphasized by the fact that the testimony of the thief who sells the property does not have to be corrobo-

rated as a witness since he is not an accomplice of the one who receives them. Smith v. State, 78 Okl.Cr. 375, 148 P.2d 994. We can envision cases where in the absence of such an instruction as enlarged instruction No. 3 an innocent person might be the victim of designing conspirators. It could be possible that this defendant could be innocent of the crime herein charged and still be guilty of the other offenses testified to by the thieves which makes the necessity for the suggested instruction more obvious, for the law does not countenance a conviction predicated on other offenses but only on the one charged in the information. For the foregoing failure of the trial court to properly safeguard the defendant against conviction on the other offenses testified to by the thieves and not for the one for which he was on trial, we are of the opinion that this case should be and the same is hereby accordingly reversed and remanded with directions to again try the defendant on the charge herein involved according to the principles as hereinbefore set forth.

POWELL, P. J., and JONES, J., concur.