Joe "Red" HOLT and Roberta Holt,
Plaintiffs in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12778.

Court of Criminal Appeals of Oklahoma.

March 30, 1960.

Rehearing Denied Aug. 3, 1960.

T. Hurley Jordan, Jr., Oklahoma City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Joe "Red" Holt and Roberta Holt and Hugh Wall were jointly charged in the court of common pleas of Oklahoma County with unlawful possession of intoxicating liquor, were tried before a jury, the Holts found guilty and each by the jury assessed a fine of $500 and three months imprisonment in the county jail. The jury decided in favor of Wall and that ended the matter so far as he was concerned.

The record was filed in this Court on May 22, 1959 and the case being a misdemeanor, brief was due in twenty days, but brief had not been filed at the time of the setting of the case for oral argument for the September 23, 1959 docket, and was filed out of time on that day. The Attorney General within the time allowed for filing brief, filed a motion to dismiss, and the case-made failing to show that the same was served, signed and settled within extension of time for such purpose, this Court sustained the motion and prepared opinion in accordance. Within the time allowed counsel for defendant filed a petition for rehearing, alleging and showing that the Attorney General failed to mail him a copy of the State's motion to dismiss, and the record sustained counsel. There were submitted a certified copy of the minutes of the court, and of an order extending time to serve case-made that had been omitted from the record filed in this Court, and certified by counsel as being correct.

■ By reason of the facts recited, this Court has ordered withdrawn its opinion of December 2, 1959. It is the policy of this Court by reason of the liberty of citizens being involved, to whenever possible decide cases on the merits.

This is the last of the appeals from conviction of unlawful possession of whiskey under prohibition.[1] The facts are somewhat complicated.

Deputy Sheriff E. A. Capshaw of the Criminal Investigation Division, Oklahoma County Sheriff's office, on the morning of November 17, 1958 had prepared and filed in the office of a justice of the peace, felony charges against the within defendants. He left the warrants for arrest at the sheriff's office, as he was going to Guthrie. The defendants' home could be passed on the way, so officer Capshaw decided to drive by and if he should see life about the house, radio others at the sheriff's office. The evidence was that Mr. Holt spent much of his time out of the State. But as officer Capshaw was passing the Holt home at 1800 Northeast 65th Street, he saw Mr. Holt standing in the left side of the doorway of his garage with Hugh Wall, who worked for the Holts, and whom Mr. Holt so described when testifying in support of a motion to suppress. Defendant Holt further testified that there was no whiskey lying on the floor of the garage but that there was some in his wife's Oldsmobile car and some in Hugh Wall's car. Said he: "We had some in each one of them." Witness admitted that his wife held a federal liquor stamp at that address. He said the doors to the Oldsmobile were closed, but a door to Hugh Wall's car might have been open.

■ Of course officer Capshaw by reason of the felony charge pending and the warrants of arrest outstanding, had authority to take defendant Holt into custody.

See Loftin v. State, 60 Okl.Cr. 183, 62 P.2d 664, 665, where in paragraph 2 of the syllabus this Court said:

"Where the officers have information that a felony has been committed, and where they have reasonable ground to believe the defendant has committed this felony, they may legally arrest him, and evidence obtained by a search of the car in which the defendant had been riding, after the defendant is arrested, is admissible against him."

1. The prohibitory liquor laws were repealed by a vote of the people, and the

law became effective June 23, 1959. 37 O.S.A. § 501.

The evidence on motion to suppress disclosed that Mr. Wall suddenly jerked down and closed the garage door as officer Capshaw was passing, so Capshaw stopped, backed his car up and drove to the door of the Holt garage and the officer got out, and he said that he knocked on the door. Defendant Holt said that the officer kicked on the door. At any rate, Holt opened it.

Officer Capshaw's version is as follows:

" * * * I then went up and knocked on the door—I didn't kick on it, I knocked on it—and Red opened the door. He was the only one in the garage that I had seen. And I said, 'What's goin' on?' 'Oh,' he said, 'I told that idiot that was you and you probably wouldn't have stopped if he hadn't jerked that door down'. And I said, 'Well, things do happen, don't they?'

"The door to Hugh Wall's car was standing open, and I asked him where the other boy went, and he said, 'Oh, he went in to drink some coffee'. He went in in quite a hurry.

"I went ahead and walked on into the garage and Red was standing at the side of Wall's car on the east side of the garage. The door was standing open and the whiskey was in plain sight; they were transferring it from one car to the other. He said he just knew he was in trouble because he was trying to get out some orders and that is the way it was.

"I never notified him of the warrant because I knew it was on file and it was a felony warrant and I had a right to make the arrest, but I thought I would just wait until the sheriff got there with the warrants.

"Q. Did you call the sheriff's office? A. Yes, I called Sheriff Turner and told him to come on out. And at that time he brought Mr. Lynch and Lamb with him.

"Q. What did you do when they arrived? A. Told them the circumstances and what had happened, and that when I saw Red I went ahead and stopped. Due to the fact that we had a felony warrant.

"He said, 'Have you told him yet what it is for?' And I said 'No', and he told Frank Lynch, he says, 'Well, go on in there and take them to jail on the burglary warrant, and we'll look around.'

"I found approximately, I don't remember, six or seven cases of whiskey in the two cars in the garage. I never found any more. I was there later when—

"Q. You didn't bring them down to jail? A. No, I went on to Guthrie.

"Q. You went on out of town? A. Yes."

■ While officer Capshaw failed to tell defendant Holt about the felony warrant where defendant had been charged with burglary, the officer did have a right to come to defendant's garage where he had observed defendant, and to place Holt under arrest on the felony charge; but when the defendant opened the garage door and before he could tell him about the felony warrant the officer observed through the open door of Wall's car packages the officers described as whiskey. The liquor was in lugs. The defendant Holt in his testimony referred to the packages as whiskey. Officer Capshaw had authority under the circumstances recited, to arrest defendant for illegal possession of intoxicating liquor, the law being violated in his presence when he was at a place where, under the recited circumstances, he had a right to be. The officer proceeded to take charge of the lugs described as whiskey and radioed the Sheriff and requested him to bring the felony warrants. He had a right to make a further search, but he was on his way to Guthrie, so he left that to the Sheriff. Awaiting the sheriff, no further search was made.

Under the above facts the court overruled the motion to suppress.

We find that there was a detention of the defendants that amounted to an arrest and that it was by reason of the lugs described as whiskey that the officer saw and which he took into his possession. As to what constitutes arrest, see: 22 O.S. 1951, §§ 186 and 190; McAdams v. State, 30 Okl.Cr. 207, 235 P. 241; Heinzman v. State, 45 Okl.Cr. 305, 283 P. 264; Hoppes v. State, 70 Okl.Cr. 179, 105 P.2d 433. The question as to whether the lugs contained whiskey was eliminated on motion to suppress by defendant referring to them as whiskey. Said he:

"Yes, sir. He [Capshaw] drove by, and I guess he seen myself and Hugh standing there, and he got about half a block down the road and backed up and pulled in. And Hugh, in the meantime had pulled the garage door down, and Capshaw kicked on the garage door and I opened the garage door. He wanted to know what was goin' on, and I said, 'Nothing'. So he looked in the cars and found some whiskey."

While awaiting the sheriff, officer Capshaw had permitted Hugh Wall, who worked for the Holts, to drive Mrs. Holt's Oldsmobile to town to get her, she having telephoned for transportation. She arrived home before the sheriff got there. Mrs. Holt testified on motion to suppress:

"Yes, sir. They had some whiskey stacked out in the middle of the garage [when she got home], and I said, 'What's all this?' And he [Capshaw] said they was waitin' for a car to come after it. And I said, 'Why don't you take it down in mine?' "

It is our opinion that under the facts the trial court did not err in overruling the motion to quash.

The case came on for trial on February 9, 1959 and as to the whiskey found in the garage, there was repetition, though supplemental somewhat, of the evidence heard on the motion to suppress. But the case was complicated by the happenings in connection with the subsequent arrests on the felony charge.

Deputy Sheriff Capshaw testified about the felony warrant for the defendant Holt and seeing him in his garage; about the slamming down of the door, his knocking on it, and Mr. Holt opening the door. Then, said he, "As I walked in he said, 'I told that idiot [Wall] not to shut the door, that you probably wouldn't have stopped if he hadn't', and, 'I just got this load of whiskey in and I would have been rid of it in a few minutes.' " Witness said that he and defendant Holt unloaded the whiskey out of both cars and stacked it behind the cars. In the meantime, the officers had radioed for Sheriff Turner to bring out the felony warrants.

As to Mrs. Holt, witness said:

"Yes. The telephone rang and Red came out to the garage and said that Roberta was on the phone and wanted to know if it was all right for Hugh Wall to go after her, and I said all right, that it would be all right, and we had to move the whiskey out a little so Hugh could get his car out. And he went and got her and brought her back to the house.

"And as she got out of the car and came into the house, I guess she was a little mad. She said, 'Why do you always get my whiskey and don't pick on anybody else?' "

Witness was asked:

"What did you do after the other deputies and Sheriff Turner arrived at the scene? A. Sheriff Turner asked where Red and Roberta was and I said, 'in the kitchen.' And at that time he handed Frank Lynch the felony warrants and said, 'Go in and tell them they are in trouble, not only on this deal but other troubles they are in.' And Mr. Lynch went on into the house, and I don't know the conversation in there, and they left later. And then the sheriff, Gene Wells and I found more whiskey in the house."

Witness was asked about additional liquor found in the defendants' house, and particularly the location. He answered:

"The one that the sheriff and I found, the sheriff knew where it was. It was under the service or laundry room floor. To get into it, you plug into a light socket, which automatically releases an electric lock and tips a piece of furniture over and raises the floor, and there is a hole in the ground, I would say approximately eight foot square, and there was about ten or fifteen cases down in there."

Witness on further cross-examination said that he did not inform Mr. Holt about the felony warrant when he arrived because "He didn't give me an opportunity. He went to talking about whiskey in the automobile." Witness said that the Wall car being open the whiskey was in plain view.

Frank Lynch, deputy sheriff, testified that on November 17, 1958 he was directed to go to Joe Holt's address and meet officer Capshaw and the Sheriff, and that officer Lamb accompanied him. We quote from his testimony:

"Q. Would you please tell me what transpired when you arrived at the scene? A. We drove up there and we saw some whiskey stacked on the floor of the garage. As I walked up Sheriff Turner gave me a couple of warrants and said that Mr. Holt and Mrs. Holt and Hugh Wall were in the house, to go ahead and take them on and book them in jail on the whiskey charge, also the warrants.

"Q. What kind of warrants? A. Burglary in the first degree, I believe.

"Q. Felony warrants? A. Yes, sir.

"Q. Did you personally serve those on the defendants in this case? A. Yes, sir. I would like to elaborate on that just a minute.

"Q. Please tell me what occurred. A. I thought they had been placed under arrest before I arrived. I didn't know but I presumed they had. But Mr. Capshaw, Mr. Turner and Mr. Wells were there and the sheriff told me to go on in and arrest them and book them in jail, and I did. After we got in the car and started to the courthouse, Mrs. Holt wanted to return back there and get her purse with some money in it, which we did do. We took her back to the house to get her purse, and I don't know whether it was while she was in there or coming back to the car—Mr. Holt remembers the conversation,—Mrs. Holt doesn't— that I told him we had the felony warrants. And we took them down and booked them on possession of whiskey and the warrants also for investigation."

Witness was asked if he had any conversation with defendants on the way to the jail. Said he:

"Red wanted to know what we were going to book him on, and I told him we had the felony warrants on him and Mrs. Holt and were going to book them for investigation on the warrants and also for the possession of whiskey."

Deputy Lynch identified State's Exhibits 1 and 2, in two carts, and being 1784 half pints, 168 pints and 12 four-fifths, and he said, "Yes, sir. That is the whiskey that came from Mr. Holt's home at the time we made the raid on the 17th day of November 1958." He said that he personally inventoried it.

On re-cross-examination witness was asked by defendant counsel: "You never did break one of the packages open to see for yourself if this was whiskey? A. Part of it in the cases was opened." Witness further said that at the time the defendants were arrested (on the felony charges) that the liquor was not in cases. He said that he was then speaking of the time they returned to the defendants' home after the defendants had been taken to jail. The record discloses that these officers returned to help transport the whiskey to the sheriff's vault.

Officer Lamb testified substantially as officer Lynch. Some significant statements were:

"Well, the Sheriff gave Mr. Lynch some warrants and told us to take Mr. Holt and Mrs. Holt and Hugh Wall and put them in jail."

Also:

"Well, when we had just drove about a half block, Mrs. Holt wanted to know if her money would be safe, and we told her we would take her back and let her get it. And she went back and got a purse full of bills and change and we left. And I don't know how far we had gone when one of them said, 'What the heck is this all about?' And Mr. Lynch said we had warrants on them. And at that time we pulled the warrants out to look and see what they was, and there was some conversation about what happened on the warrants; why the warrants were issued, or something, but I don't remember exactly what it was."

Witness said that they booked Mr. and Mrs. Holt on burglary in the first degree, investigation, and possession of whiskey and Mr. Wall on investigation and possession of whiskey. Defense counsel asked him:

"You didn't ascertain, other than you had some packages, you didn't ascertain other than that what the contents of those packages were, did you? A. There were two cases that were open, that you could see the bottles of whiskey."

Witness admitted that this was for "the whole deal". He said they did not have the contents of the bottles analyzed.

Ernest E. (Jake) Zamarsha, investigator in the county attorney's office, testified to obtaining State's Exhibit No. 3 from the United States Treasury Department, Grand Avenue, Oklahoma City, and being record of a retail liquor dealer's stamp issued to defendant Roberta Holt and covering the period of November 17, 1958.

Hugh Wall testified for the defense. He denied ownership of the whiskey in evidence or any interest in it. He said that he worked for the Holts, delivering whiskey for them. He said he was so employed by the Holts on November 17, 1958, but denied that he had placed the whiskey in his car that was in the Holt garage. He admitted convictions for vagrancy and possession of whiskey.

Defendant Joe Holt testified:

"Hugh and I were standing there in the garage door as the car went by with two people in it. And Mr. Capshaw went down about a half block, backed up and came up. The door had been pulled down by Hugh, and I was getting ready to leave. He [Capshaw] kicked on the door, and I went and opened it. And he said, 'What is going on?' and I said, 'Nothing'. And he went and looked in the car and saw the 'hooch' and he said, 'I thought you said "nothing"'.

"Q. He never did tell you you were under arrest at that particular time? A. No, sir.

"Q. He never did show you a warrant of any description? A. No."

Witness further stated that he did not stay in Oklahoma much, that he was engaged in gold mining and uranium mining. He was asked:

"Q. This whiskey that was found on your premises was not yours? A. That's right.

"Q. Who did it belong to? A. It belonged to the wife. I guess it did. It didn't belong to me."

This concluded the evidence and the court overruled a demurrer interposed by the defendants.

We shall now consider the errors claimed to have taken place during trial.

It is urged that defendant Holt and his wife were entitled to be tried separately, and that the court abused its discretion in failing to grant a severance.

The record shows that on the day of trial, counsel for the defendants demanded a twelve-man jury, but before the jury was called, counsel stated: "Comes now the defendants and ask for a severance in this case."

■■ In Patty v. State, 74 Okl.Cr. 322, 125 P.2d 784, 785, this Court said, in paragraph 1 of the syllabus:

"Under Criminal Procedure (section 3065 O.S.1931, O.S.1941, tit. 22, § 838), when two or more defendants are jointly charged with a misdemeanor, the granting or refusal of a severance rests in the discretion of the court. The exercise of such discretion is reviewable, but to be reviewed the case-made or bill of exceptions must show an application for severance, setting out sufficient grounds therefor and supported by affidavit or oral testimony, and the application must be made before the impaneling of the jury is begun."

■ It is stated that it was never shown that the liquor was intoxicating; that the contents of no bottle was ever analyzed. And the record does show that there was no analysis of the liquor and that no witness was asked with reference to the names or brands on the cartons or bottles. Of course the lugs were on a cart and identified as coming from defendants' garage and home. The lugs had been admitted and referred to by defendants as "whiskey". No question as to the contents was raised. If there had been, it would have been an easy matter to have unwrapped the lugs and obtain the brand or brands. Two officers had testified to some of the bottles being unwrapped at the time they transported the liquor to the sheriff's vault. Counsel himself, in addition to the Holts, referred to the lugs as whiskey. And this Court has many times said that it would take judicial knowledge that whiskey is intoxicating. Hughes v. State, 85 Okl.Cr. 25, 184 P.2d 625; Bryson v. State, 96 Okl. Cr. 49, 248 P.2d 253 and cases cited. If this had been beer or cider, then it would

have been incumbent on the State to show the alcoholic content to be more than 3.2 per cent, or to have produced the testimony of persons who had sampled the same, and who qualified to give an opinion as to the liquor being intoxicating.

It is next argued that the court "failed to give proper instructions as to the theory of the defendants' defense."

After a careful reading of the record, the only defense we can discover is where the defendant Joe "Red" Holt attempted to contradict other parts of the record heretofore quoted and simply say that his wife was owner of the whiskey. And of course she did possess a federal liquor stamp. The court was particular, in view of the contradictions in the statements of the defendant Holt on motion to suppress, to make inquiries of counsel:

"The Court: For the record. Now, let's go back to the first case. Did Mr. Holt ever admit ownership of the contraband here?

"Mr. Jordon: He never did here for the record.

"The Court: Does he or does he not? Does he admit that he owns the contraband and property?

"Mr. Jordon: That's right; that he owns the property in question.

"The Court: And the contraband that was picked up?

"Mr. Jordon: He owns the property, your honor.

"The Court: All right."

On trial officer Capshaw testified:

"As I walked in he said, 'I told that idiot not to shut that door; that you probably wouldn't have stopped if he hadn't.' And, 'I just got this load of whiskey in and I would have been rid of it in a few minutes."

This testimony was never categorically denied by defendant Holt when he testified. Roberta, his wife, although testifying on motion to suppress, did not testify on trial.

■ Under the circumstances recited, and the testimony summarized, if counsel

for the defendant felt that he was entitled to an instruction different from those given by the Court, it was his duty to have reduced such instruction or instructions to writing, submitted them to the trial judge, and requested that they be given to the jury. Having failed to do this, and having failed to except to the instructions actually given by the court, the within convictions may not be reversed unless this Court would be of the opinion, in the light of the entire record and instructions of the court actually given, that by the failure of the trial court to instruct the jury upon some material question of law, the defendant has been deprived of a substantial right. We do not so find.

See Adams v. State, 62 Okl.Cr. 167, 70 P.2d 821; Carpenter v. State, 56 Okl.Cr. 76, 33 P.2d 637; Williams v. State, 89 Okl.Cr. 146, 205 P.2d 1164.

Further complaint is made as to the officers searching defendants' house following the arrival of the sheriff an hour or so after officer Capshaw had searched the two automobiles in the garage upon seeing whiskey in one of the cars that had the door open. No details of the search of the house were developed on the motion to suppress. But upon trial it did develop that after the Sheriff appeared with the felony warrants, a search was made of the house and two cases of whiskey were found in the dining room and a number of cases found in an ingenious hiding place under the floor, as has been detailed.

In the first place, having found that officer Capshaw saw the law being violated in his presence when he was in a place where he had a right to be, under the circumstances recited, he had a right to search the premises for additional whiskey. But this he delayed as a task for fellow officers and stayed with the two automobiles and the great number of lugs of whiskey found in the garage. The sheriff had a right to continue the search when he arrived, by reason of the initial right of search of officer Capshaw.

It is not necessary to determine the right to search under the warrant later brought out by the sheriff wherein defendants were charged with burglary. If they were charged with burglarizing a circus and taking away an elephant, to state an extreme case, the officers, under the circumstances here enumerated, would not have been justified in searching the home by reason of the warrants, for whiskey. This because after a lawful arrest without a warrant, search of defendants and their immediate presence for weapons, or to prevent escape, and for evidence to support the charge to be filed, may be made. It would have been a physical impossibility for an elephant to have been in the house. But, on the other hand, if in process of the burglary charge, a quantity of whiskey or other merchandise had been alleged to have been taken, then the officers under the burglary warrant would have been justified in searching for evidence of the crime. See Brinegar v. State, 97 Okl.Cr. 299, 313, 262 P.2d 464.

While in Heinzman v. State, 45 Okl.Cr. 305, 283 P. 264, this Court said:

"The failure of a peace officer, in making an arrest for a felony, to inform in express terms the person sought to be arrested of his authority and the cause of the arrest, will not render his acts illegal, where the person about to be arrested knew the officer and that he was an officer and was acting as such."

we do not approve of officers standing silent and failing to inform an accused what he is being arrested for. And where the charge is a felony, the warrant for the arrest should be served on the accused. And while in the within case we feel from the evidence that the defendants well knew why they were being arrested, by reason of the inattentions by the officers to the letter of the law, and while the conviction will be affirmed, the penalty assessed will be modified.

The judgment appealed from as to Joe "Red" Holt of a fine of $500 and three months imprisonment in the county jail, is modified to a fine of $250 and confine-

ment in the county jail of Oklahoma County for a period of six weeks.

The judgment appealed from as to Roberta Holt of a fine of $500 and three months imprisonment in the county jail is modified to a fine of $250, and confinement in the county jail of Oklahoma County for a period of six weeks.

In all other respects the judgment appealed from, based on the verdicts of the jury, is affirmed.

BRETT, J., concurs.

NIX, Judge.

This case presents a very close question as to the legality of the search and seizure, and for that reason I agree that a modification of the sentences imposed is thoroughly justified.